1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORDBY CONSTRUCTION, INC., <br><br>    Plaintiff, <br><br>    v. <br><br> AMERICAN SAFETY INDEMNITY COMPANY, et al., <br><br>    Defendants. | Case No.:14-CV-04074-LHK <br><br> **ORDER GRANTING IN PART AND DENYING DEFENDANT AMERICAN SAFETY'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT AIG SPECIALTY'S MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 23, 24 |

Plaintiff Nordby Construction, Inc. ("Plaintiff" or "Nordby") brings this action for breach of insurance contract against Defendants American Safety Indemnity Co. ("American Safety"), American International Specialty Lines Insurance Company ("AIG Specialty"), and Ace American Insurance Company ("ACE"). Before the Court are Defendants American Safety's and AIG Specialty's motions to dismiss Plaintiff's First Amended Complaint. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART AND DENIES IN PART American Safety's motion to dismiss and GRANTS IN PART and DENIES IN PART AIG Specialty's motion to dismiss.

1

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Nordby was hired by Summit State Bank as the general contractor to construct the Summit State Project. First. Am. Compl. ("FAC"), ¶ 10. Plaintiff subcontracted with Kenyon Construction, Inc. ("Kenyon") to "furnish and install a 'complete weather tight and watertight' EIFS system on the exterior" of the Summit State Project. *Id.* Plaintiff's subcontractor agreement with Kenyon required Kenyon to:

> (a) procure and maintain a policy of commercial general liability insurance, with minimum limits of $1 million per occurrence and $1 million in the aggregate for completed operations, naming [Plaintiff] as an additional insured . . .

> (b) include, in the required insurance, a provision stipulating that the coverage provided to [Plaintiff] as an additional insured is primary and non-contributing with any other insurance available to [Plaintiff] or the owner of the Summit State Project;

> (c) include, in the required insurance, completed operations coverage, broad form property damage coverage, and contractual liability coverage with respect to all operations by or on behalf of [Kenyon]; and

> (d) defend and indemnify [Plaintiff] against any loss of liability arising out of, or in connection with, [Kenyon's] operations to be performing under the agreement.

*Id.* ¶ 11.

On or about July 26, 2002, Plaintiff received a certificate of insurance certifying Kenyon was insured by Defendant American Safety for the period from July 1, 2002 to July 1, 2003 under a policy of commercial general liability insurance with $1 million dollar limits per occurrence and in the aggregate. *Id.* ¶ 12. The certificate also certified that Plaintiff was an additional insured, and that the coverage was primary and non-contributing. *Id.* Plaintiff also alleges that it is "an additional insured under the terms of the policies issued by" Defendant AIG Specialty and ACE. *Id.* ¶ 13.

Plaintiff constructed the Summit State Project "largely in 2002," which is the period of time during which Kenyon provided its services under the subcontractor agreement. *Id.* ¶ 14. The

2

"Notice of Completion" was recorded on February 27, 2003. *Id.*

### 1. Underlying Litigation

Following the completion of construction, Summit State Bank "observed water intrusion" and filed suit against Plaintiff and its subcontractors. *Id.*; *see also Summit State Bank v. Nordby Construct. Co.*, No. SCV-249420 (Sonoma Cnty. Sup. Ct.). Summit State Bank determined that the water intrusion was related to the EIFS exterior installed by Kenyon, and that the entire EIFS system had to be removed and replaced. *Id.* ¶ 17. Plaintiff filed a cross-complaint for indemnity against Kenyon. *Id.* ¶ 15. Plaintiff also tendered its defense to Kenyon. *Id.* Plaintiff alleges that "[t]he tenders of defense were all denied," and Plaintiff had to defend itself in the state court action. *Id.*

Plaintiff settled the state court action with Summit State Bank for $3.4 million dollars, with Plaintiff responsible for $649,000, Kenyon responsible for $285,000, and the other subcontractors contributing the balance. *Id.* ¶ 18. The settlement did not resolve Plaintiff's claims against Kenyon. *Id.* Nordby avers that Kenyon was defended in the underlying state court action by American Safety under a policy of commercial general liability insurance. *Id.* ¶ 19. American Safety allegedly exhausted all but $256,690.60 of the policy's limit at the time of settlement. *Id.* As Kenyon owed $285,000 under the terms of the settlement, Nordby contributed the additional $19,309.40 difference between Kenyon's settlement obligations and the remaining insurance funds. *Id.*

In or about August 2012, Nordby and Kenyon entered into a partial settlement agreement in which Kenyon assigned its rights against all of its liability insurers to Nordby, in exchange for "certain material concessions." *Id.* ¶ 33. Those concessions included Nordby's payment of the $19,309.40 owed by Kenyon, crediting Kenyon for the $265,690.60 contribution against any arbitration award entered in Nordby's favor, and Nordby's agreement not to execute any award against Kenyon's non-insurance assets. *Id.* ¶ 34. As a condition of settlement, Kenyon and Plaintiff agreed to arbitrate Plaintiff's claims for defense and indemnification. *Id.* ¶ 20. Kenyon

3

United States District Court
Northern District of California

and Nordby arbitrated the claims on September 12, 2012, and the arbitrator rendered a decision on September 18, 2012. *Id.* The arbitrator found that Kenyon had failed to properly install the EIFS system, resulting in "significant water intrusion." *Id.* ¶ 20. The arbitrator awarded Nordby damages in the amount of $924,974.06, and attorney's fees and costs in the amount of $174,808.10. *Id.* ¶ 21. According to Plaintiff, the Superior Court confirmed the arbitration award and entered the award as a judgment on January 9, 2013. *Id.* ¶ 23. The Superior Court credited Kenyon for the $265,690.60 Kenyon contributed to the settlement of the underlying state court action with Summit State Bank, "resulting in a net judgment of $834,091.50, plus interest on that amount at the legal rate of 10 percent per annum from September 12, 2012." *Id.* According to Plaintiff, the amount currently due exceeds $950,000. *Id.*

### 2.  Defendants' Insurance Policies and Tender Responses

Plaintiff alleges that Defendant American Safety insured Kenyon under two primary policies of commercial general liability insurance effective July 1, 2002 to July 1, 2003 (Policy XGI 02-1747-003), and July 1, 2003 to July 1, 2004 (Policy XGI 03-1747-004). *Id.* ¶ 25. American Safety allegedly agreed to defend Kenyon under the 2002–03 policy, but denied coverage under the 2003–04 policy. *Id.* Plaintiff believes both policies carried limits of $1 million dollars per occurrence, "exclusive of defense and other supplementary payments coverage," and that both polices are now "exhausted with respect to [Kenyon's] legal obligation to pay damages." *Id.* Plaintiff further alleges that American Safety exhausted its policy limit under the 2002–03 policy before the arbitration, but only exhausted its policy limit under the 2003–04 policy after the arbitration. *Id.* ¶¶ 26–27.

Plaintiff first tendered its defense to American Safety under the 2002–03 and 2003–04 policies on or about June 2, 2011. *Id.*¶ 35. According to Plaintiff, it was entitled to a defense and indemnification under these policies as an additional insured and a contractual indemnitee of the named insured, Kenyon. *Id.* American Safety "ignored" the tender. *Id.* Plaintiff again tendered its defense to American Safety on or about September 29, 2011, November 8, 2011, and January 2,

4

1    2012, and American Safety allegedly ignored these tenders as well. *Id.* On or about December 16,

2    2013, Nordby tendered the judgment entered against Kenyon, requesting payment of the attorney's

3    fees and costs awarded against Kenyon. *Id.* ¶ 37.

4         As to Defendant AIG Specialty, Plaintiff alleges that AIG Specialty insured Kenyon under

5    a primary policy of commercial general liability effective July 1, 2004 to July 15, 2005 (Policy GL

6    933-32-99). *Id.* ¶ 29. Defendant AIG Specialty denied coverage to Kenyon, and declined

7    Kenyon's tender of defense. *Id.* The AIG Specialty policy carried a liability limit of $1 million

8    dollars per occurrence, "exclusive of defense and other supplementary payments coverage." *Id.*

9    AIG Specialty also allegedly insured Kenyon under three policies of umbrella liability insurance

10   effective July 1, 2002 to July 1, 2003 (Policy BE 7413924), July 1, 2003 to July 1, 2004 (Policy

11   BE 9745186), and July 1, 2004 to July 1, 2005 (Policy BE 9745761). *Id.* ¶ 32. Plaintiff avers that

12   AIG Specialty denied coverage under the umbrella policies, claiming that Kenyon had not

13   exhausted its primary insurance coverage. *Id.* Each umbrella policy carries a liability limit of $5

14   million dollars. *Id.*

15        On or about January 20, 2014, Nordby tendered to AIG Specialty the judgment entered

16   against Kenyon in the underlying state court action. *Id.* ¶ 39. AIG Specialty has refused to pay any

17   portion of the judgment awarded against Kenyon. *Id.*

18        Defendant ACE allegedly insured Kenyon under three primary policies of commercial

19   general liability insurance effective July 15, 2005 to July 15, 2006 (Policy HDO G205909097A) ,

20   July 15, 2006 to July 15, 2007 (Policy HDO G21702390), and July 15, 2007 to July 15, 2008

21   (Policy HDO G2451027A). *Id.* ¶ 30. ACE denied coverage under all three policies and declined

22   Kenyon's tender of defense. *Id.* Plaintiff alleges that each policy carries a limit of $1 million

23   dollars per occurrence, exclusive of defense and other supplementary payments coverage. *Id.*

24   Plaintiff further alleges that the 2005–06 and 2007–08 policies had "designated work exclusions

25   precluding coverage for the Summit State Bank project," but that the 2006–07 policy did not have

26   such an exclusion. *Id.*

27

United States District Court
Northern District of California

5

28   Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

1    On or about January 20, 2014, Nordby tendered to ACE the judgment entered against

2    Kenyon in the underlying state court action. *Id.* ¶ 40. ACE rejected the request for payment,

3    claiming that its policies had an applicable designated work exclusion. *Id.* Plaintiff requested a

4    copy of the exclusion for the 2006–07 policy, but received no response. *Id.*

5    **B.  Procedural Background**

6    Plaintiff Nordby filed its complaint in Santa Clara County Superior Court on June 25,

7    2014. ECF No. 1. Defendant AIG Specialty removed the action to federal court on September 8,

8    2014. *Id.* Defendant American Safety filed its consent to removal on September 24, 2014. ECF

9    No. 12. Defendant ACE filed its consent to removal on January 6, 2015. ECF No. 38.

10   Defendants AIG Specialty and American Safety filed motions to dismiss on September 15,

11   2014. ECF Nos. 7, 8. Plaintiff filed oppositions on September 29, 2014. ECF Nos. 13, 14. Plaintiff

12   filed its First Amended Complaint ("FAC"), that same day. ECF No. 15. On October 6, 2014, the

13   Court granted the parties' stipulation to the withdrawal of Defendants AIG Specialty's and

14   American Safety's motions to dismiss in light of the FAC. ECF No. 20.

15   Defendants AIG Specialty and American Safety filed the instant motions to dismiss on

16   November 5, 2014. ECF Nos. 23, 24. Plaintiff filed its oppositions on November 19, 2014, ECF

17   Nos. 27, 28. Defendants AIG Specialty and American Safety replied on November 26, 2014. ECF

18   Nos. 29, 30.

19   Defendant ACE filed its motion to dismiss on January 6, 2015. ECF No. 35. Plaintiff filed

20   its opposition on January 20, 2015. ECF No. 45. Defendant Ace replied on January 27, 2015. The

21   Court does not address ACE's motion to dismiss in the instant order, as ACE's motion is set for

22   hearing on April 9, 2015. ECF No. 35.

23   **II.  LEGAL STANDARD**

24   **A.  Rule 12(b)(6)**

25   Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

26   action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

27                                          6

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

1   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

2   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3   defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

4   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

5   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes

6   of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

7   true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek*

8   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

9        Nonetheless, the Court need not accept as true allegations contradicted by judicially

10   noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

11   record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v.*

12   *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v.*

13   *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Shwarz*, 234 F.3d at 435. Nor is the

14   Court required to "'assume the truth of legal conclusions merely because they are cast in the form

15   of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining*

16   *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and

17   unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

18   F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal*,

19   556 U.S. at 663–64.

20   **B.  Leave to Amend**

21        If the Court determines that the complaint should be dismissed, it must then decide whether

22   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

23   "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

24   of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or

25   technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

26   marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

27                                              7

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

1    'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

2    deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and]

3    futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.

4    2010) (alterations in original) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

5    **III. DISCUSSION**

6         Here, Plaintiff alleges claims for breach of insurance contract, direct action under

7    California Insurance Code § 11580, insurance bad faith, and declaratory relief against all three

8    Defendants. The Court begins by addressing American Safety's motion to dismiss, and then turns

9    to AIG Specialty's motion to dismiss.

10        Before the Court turns to the substance of American Safety's motion to dismiss, the Court

11    summarizes some basic principles of insurance law in California. Under California law, an insurer

12    has a broad duty to defend insured entities against claims that create a potential for indemnity. *See*

13    *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993). The duty to defend is broader than

14    the duty to indemnify. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

15    While the duty to defend is broad, it is not unlimited. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.

16    4th 1, 19 (1995). In determining whether there is a duty to defend, courts must look to the

17    complaint in the underlying litigation and "all facts known to the insurer from any source." *See*

18    *Montrose Chem. Corp.*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to the

19    defendant at the time it refused to defend the underlying lawsuit created the potential for coverage

20    under the policy. *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (Ct. App. 1995).

21        If there was no potential for coverage under the insurance policy based on the underlying

22    complaint and extrinsic facts made known to the insurer, then the insurer has not breached the

23    insurance contract by refusing to defend. *See Montrose Chem. Corp.*, 6 Cal. 4th at 295. The

24    insured has the burden of adequately alleging that there was an "occurrence." *See Blue Ridge Ins.*

25    *Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998). Furthermore, "a bad faith claim cannot be

26

27                                      8

28    Case No.: 14-CV-04074-LHK

United States District Court
Northern District of California

1    maintained unless policy benefits are due." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136,

2    1153 (1990).

3         In interpreting an insurance policy, the Court first looks to the language of the policy itself.

4    The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense

5    . . . controls judicial interpretation unless [the disputed terms are] used by the parties in a technical

6    sense, or unless a special meaning is given to them by usage." *See Montrose Chem. Corp. v.*

7    *Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995). "If the meaning a layperson would ascribe to the

8    language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Id.*

9    at 666–67. "[I]f the disputed terms are ambiguous, a court must attempt to resolve the ambiguity

10   by adopting the meaning that reflects the objectively reasonable expectations of the insured."

11   *Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 881 (N.D. Cal. 2006). "[I]f the court is

12   unable to determine the objective expectations of the insured, the ambiguity is resolved against the

13   insurer." *Id.* at 882.

14        **A.  American Safety**

15        Defendant American Safety contends that Plaintiff has no right to recover because (1) the

16   dollar limits of coverage were exhausted prior to entry of judgment; (2) Plaintiff has failed to state

17   a viable breach of insurance contract claim against American Safety; (3) Plaintiff cannot state a

18   § 11580 direct action claim as a judgment creditor; (4) Plaintiff has failed to allege facts

19   supporting its bad faith claim; and (5) Plaintiff has failed to state a claim for declaratory relief. The

20   Court addresses each argument below.

21        **1.  Exhaustion of Policy Limits**

22        As a threshold matter, American Safety contends that Plaintiff has admitted that it does not

23   seek, and cannot recover the damages portion of the judgment from American Safety. *See* ECF

24   No. 24 at 12–13. The Court finds that the parties do not dispute that Plaintiff seeks recovery only

25   under the "Supplemental Payments Provision" of the relevant policies. Plaintiff explains that it

26   "seeks to recover under American Safety's Supplemental Payments Provision for the fees, costs

27                                                          9

United States District Court
Northern District of California

and interest [Plaintiff] was awarded against Kenyon." ECF No. 28 at 3 (citing FAC ¶¶ 37–38, 43–44, 48). American Safety does not dispute that any award of attorney's fees and costs under the Supplemental Payments Provision would not be subject to the policy limits that Plaintiff averred were previously exhausted. *See* FAC, Exh. 1, at 10 (Supplemental Payments Provision ¶ 2); FAC, Exh. 2, at 10. The Court therefore finds that Plaintiff seeks recovery of attorney's fees, costs, and interest under American Safety's Supplemental Payments Provision, which is not subject to the policy limits.

### 2.  Breach of Insurance Contract

Nordby alleges breach of insurance contract in its capacity as an additional insured, an assignee of Kenyon's rights under the policies, and/or as a contractual indemnitee. Here, American Safety first argues that Plaintiff cannot plead a plausible claim for breach of contract as an assignee of Kenyon's rights under the 2002–03 policy. According to American Safety, the express terms of the policy bar Kenyon from assigning its rights without American Safety's consent. Plaintiff does not argue that Kenyon could validly assign its rights under the policy, but instead argues that Plaintiff is an additional insured under the policy, and also is entitled to sue for breach of insurance contract as a contractual indemnitee. As Plaintiff concedes that it could not be an assignee under the 2002–03 policy, the Court grants American Safety's motion to dismiss Plaintiff's breach of contract claim in its capacity as an assignee. As amendment would be futile, this dismissal is with prejudice. *See Carvalho*, 629 F.3d at 892–93.

As to Plaintiff's other bases for its breach of insurance contract claim, the Court finds that Plaintiff has sufficiently alleged a breach of insurance contract claim as an additional insured under the policy. While American Safety "reserves the right to dispute" this allegation, on a motion to dismiss the Court takes as true Plaintiff's factual allegations. Plaintiff alleges that the subcontract between Plaintiff and Kenyon required Kenyon to obtain insurance naming Plaintiff as an additional insured. FAC ¶ 11. Plaintiff also avers that it received a certificate certifying that it was an additional insured under the 2002–03 American Safety policy. *Id.* ¶ 12.

10

United States District Court
Northern District of California

In response, American Safety also argues that as an additional insured, Plaintiff's judgment against Kenyon is not covered under the "Cross Claims or Suits" exclusion ("Cross Claims Exclusion"). The Cross Claims Exclusion excludes coverage for "[a]ny claim or 'suit' for damages by any insured against another insured." FAC, Exh. A, at 32. Here, however, Plaintiff argues that the Cross Claims Exclusion is inapplicable on its face because it applies only to suits "for damages," and here Plaintiff seeks only the recovery of the costs and fees award. Plaintiff further contends that the exclusion is ambiguous with regards to whether it includes indemnity claims, especially in light of the clear intent of Kenyon and Nordby to condition the subcontractor agreement on the availability of contractual liability coverage.

The Court agrees with Plaintiff that it would be inappropriate to decide, at this point of the proceedings, whether the Cross Claims Exclusion precludes coverage as a matter of law. Plaintiff argues that it seeks recovery only of the "costs of suit," which it would be entitled to under the Supplementary Payments Provision. *See* FAC, Exh. A, at 9. Here, Plaintiff alleges that it did not assert any independent claim against Kenyon for damages, but instead sought indemnity for the claims brought by Summit State Bank against Plaintiff, arising out of Kenyon's negligence. American Safety may contest whether Nordby incurred attorney's fees and costs in prosecuting its cross-complaint against Kenyon, or in defending against Summit State Bank, but on a motion to dismiss the Court accepts Plaintiff's factual allegations as true. *See Manzarek*, 519 F.3d at 1031.

Moreover, Plaintiff has alleged that indemnification and defense were conditions of its subcontractor agreement with Kenyon, as was Plaintiff's status as an additional insured and contractual indemnitee. *See* FAC ¶ 11. Consequently, Plaintiff argues that Kenyon and Plaintiff could not have intended a result where Plaintiff's status as an additional insured would preclude liability coverage. As Plaintiff further alleges that American Safety certified Plaintiff as an additional insured, there is a factual dispute as to the contracting parties' intent. *See* FAC ¶ 12. At a minimum, the Court concludes that Plaintiff has alleged that the interaction between the Supplemental Payments Provision, Cross Claims Exclusion, and the parties' alleged intent renders

11

1    interpretation of the Cross Claims Exclusion ambiguous. A factual determination of what the

2    parties intended in an ambiguous contract cannot be adjudicated on a motion to dismiss. *Monoco*

3    *v. Bear Stearns Residential Mortg'g Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting

4    *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)). As such, the Court

5    denies American Safety's motion to dismiss Plaintiff's breach of contract claim on this ground.

6    *See also A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 497 n.2 (9th Cir. 1988)

7    ("[C]ourts may not dismiss on the pleadings when one party claims that extrinsic evidence renders

8    the contract ambiguous.").

9            The Court notes that the cases American Safety relies on in support of its argument that the

10    Court may dismiss Plaintiff's breach of contract claim based on the Cross Claims Exclusion were

11    all decided on motions for summary judgment. *See* ECF No. 24 at 16 (citing *Great W. Drywall,*

12    *Inc. v. Interstate Fire & Cas. Co.*, 161 Cal. App. 4th 1033 (Ct. App. 2008) (cross motions for

13    summary judgment); *Montgomery v. Cal. Accountants Mut. Ins. Co.*, 61 Cal. App. 4th 854 (Ct.

14    App. 1998) (summary judgment)). American Safety cites and relies heavily on *MidMountain*

15    *Contractors Inc. v. Am. Safety Indemnity Co.*, 893 F. Supp. 2d 1096 (W.D. Wash. 2012), but there

16    the court granted the defendant's motion for summary judgment with the benefit of a fuller record.

17    *See, e.g., id.* at 1109 (quoting employee declarations regarding the parties' understandings of the

18    scope of agreement requiring duty to defend). Here, the Court finds that Plaintiff has alleged a

19    plausible claim that the Cross Claim Exclusion is either inapplicable or ambiguous. Whether

20    Plaintiff or American Safety ultimately prevails is an issue that cannot be resolved on a motion to

21    dismiss. *See, e.g.*, *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084–85 (N.D. Cal. 2012)

22    (denying motion to dismiss because "the court could not say that the contracts' terms

23    unambiguously authorize Defendants' alleged behavior . . . .") (internal quotation marks omitted).

24            Accordingly, the Court denies Defendant American Safety's motion to dismiss Plaintiff's

25    breach of insurance contract claim on this basis.

26

27                                                        12

28    Case No.: 14-CV-04074-LHK
      ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
      GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

### 3.   Section 11580 Direct Action

Plaintiff's cause of action under § 11580 is based on Plaintiff's alleged status as a "contractual indemnitee, intended beneficiary, and/or final judgment creditor." Plaintiff contends it is entitled to recover both the attorney's fees, costs, and interests awarded to Plaintiff in its action against Kenyon, and the costs of Plaintiff's defense of the underlying state court action under the Supplemental Payment Provision.

Where an insurer refuses to provide a defense of its insured, a judgment may be enforceable in a direct action against the insurer under § 11580(b)(2) of the California Insurance Code. *Sanchez v. Truck Ins. Exch.*, 21 Cal. App. 4th 1778, 1787 (Ct. App. 1994). In order to recover on a judgment in an action brought under § 11580, a plaintiff must plead and prove that:

> 1) [The plaintiff] obtained a judgment for bodily injury, death, or property damage,
>
> 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,
>
> 3) the liability insurance policy was issued by the defendant insurer,
>
> 4) the policy covers the relief awarded in the judgment, [and]
>
> 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Garamendi v. Golden Eagle Ins. Co.*, 116 Cal. App. 4th 694, 709–10 (2004) (quoting *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1015 (1992)).

American Safety argues that (1) Plaintiff's § 11580 claim is precluded by the Cross Claims Exclusion; and (2) costs and attorney's fees cannot be recovered as a matter of law. The Court addresses each argument in turn.

As to American Safety's first argument, American Safety relies solely on its argument that it owes no indemnity obligation because Plaintiff's suit against Kenyon is precluded under the

13

Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

1  Cross Claims Exclusion. However, as discussed above, whether Plaintiff's claim is precluded

2  under the Cross Claims Exclusion cannot be determined as a matter of law. As American Safety's

3  argument assumes that Plaintiff cannot bring a claim as a matter of law, the Court denies

4  American Safety's motion to dismiss Plaintiff's § 11580 claim on this ground.

5       American Safety further argues that Plaintiff cannot recover costs and attorney's fees in a

6  § 11580 action as a matter of law. More specifically, American Safety relies on *San Diego*

7  *Housing Comm'n v. Indus. Indemnity Co.*, 95 Cal. App. 4th 699 (Ct. App. 2002), for the

8  proposition that a judgment creditor cannot recover costs under a supplemental payments

9  provision. In *San Diego Housing*, a third party claimant brought suit against an insured for

10  construction defects. *Id.* at 675. The insurer refused to provide a defense, and the third party

11  claimant obtained a default judgment. *Id.* The third party claimant then brought suit against the

12  defendant insurer under § 11580, seeking recovery of interest and costs from the underlying suit

13  against the insured under a supplemental payments provision. *Id.* The *San Diego Housing* court

14  applied basic third party beneficiary principles and held that the third party claimant was not an

15  intended beneficiary of the duty to defend, as it was not a party to the contract or an assignee of

16  the contract. *Id.* at 686–692. As such, the third-party claimant could not recover costs and fees that

17  were tied to the insurer's duty to defend. *Id.*

18       In the instant litigation, however, Plaintiff alleges that it is an assignee, a party to the

19  contract as an additional insured, and a contractual indemnitee. *See* FAC ¶¶ 11–12. While

20  American Safety may dispute the veracity of Plaintiff's allegations, these claims are sufficient to

21  distinguish Plaintiff's § 11580 claim from the § 11580 claim at issue in *San Diego Housing*.

22  Unlike in *San Diego Housing*, Plaintiff alleges it is an assignee, additional insured, and contractual

23  indemnitee, and is therefore not an "incidental beneficiary" to the duty to defend—to the contrary,

24  Plaintiff specifically alleges that it was entitled to a defense that American Safety subsequently

25  refused to provide. *See San Diego Housing*, 95 Cal. App. 4th at 687–88.

26       American Safety also cites *Gelfand v. North American Capacity Insurance Co.*, No. 12-

27                                                    14

4819, 2013 WL 3369266 (N.D. Cal. July 5, 2013), but that case also involved a third-party judgment creditor that was neither a party to, nor a third party beneficiary of, the insurance contract. Moreover, the *Gelfand* court, in granting partial summary judgment, noted that while the plaintiff had failed to offer evidence on this particular issue, there could have been a material factual dispute as to "whether the parties, at the time of formation, intended third-party judgment creditors, like [the plaintiff], to be the intended beneficiaries of the [supplemental payments provision]." *Id.* at *6. As discussed above, Plaintiff alleges that there is extrinsic evidence that must be considered with regards to Kenyon's and Plaintiff's intent in negotiating the subcontractor agreement, and Kenyon's, Plaintiff's, and American Safety's intent in certifying Plaintiff as an additional insured. In light of Plaintiff's different position vis a vis the insured, Kenyon, and the insurer, American Safety, the Court concludes that neither *San Diego Housing* nor *Gelfand* preclude Plaintiff's § 11580 claim as a matter of law.

The Court therefore denies American Safety's motion to dismiss Plaintiff's § 11580 claim.

### 4. Insurance Bad Faith

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing by "unreasonably, and without proper cause, refusing to" pay damages and costs awarded to Plaintiff, refusing to indemnify Kenyon, and forcing Plaintiff to file suit against Defendants to recover "benefits clearly due under the policies." FAC ¶¶ 51–52. American Safety contends that Plaintiff has failed to state a claim for insurance bad faith because (1) Plaintiff has failed to state a viable claim for recovery against American Safety; and (2) Plaintiff has failed to allege facts showing American Safety acted consciously and deliberately in unfairly depriving Plaintiff of the alleged policy benefits.

"California law implies a covenant of good faith and fair dealing in every insurance contract." *Anguiano v. Allstate Ins. Co.*, 209 F.3d 1167, 1169 (9th Cir. 2000) (per curiam) (citing *PPG Indus., Inc. v. Transamerica Ins. Co.,* 20 Cal. 4th 310, 312 (1999)). "This duty extends to an insurance company's insureds," *Anguiano*, 209 F.3d at 1169, and "requires each contracting party

15

United States District Court
Northern District of California

1   to refrain from doing anything to injure the right of the other to receive the benefits of the

2   agreement." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818–19 (1979). Furthermore, this

3   implied promise "requires that an insurer take into account the interest of the insured and give it at

4   least as much consideration as it does to its own interest when evaluating settlement offers." *Id.* at

5   1169 (internal quotation marks and citations omitted).

6           "In order to establish a breach of the implied covenant of good faith and fair dealing under

7   California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the

8   reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate

9   Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

10          Here, the Court has already rejected American Safety's arguments with respect to

11  Plaintiff's breach of insurance contract cause of action. Plaintiff has sufficiently alleged that

12  "benefits due under the policy were withheld." *See id.* As such, Plaintiff has satisfied the first

13  element of a bad faith claim.

14          Defendant American Safety further argues, however, that Plaintiff has failed to allege any

15  facts showing that American Safety acted unreasonably or wrongfully in refusing to pay the costs

16  and fees incurred by Plaintiff in its action against Kenyon. A claim for insurance bad faith lies

17  when:

18              the conduct of the defendant, whether or not it also constitutes a
                breach of a consensual contract term, demonstrates a failure or
19              refusal to discharge contractual responsibilities, prompted not by an
                honest mistake, bad judgment or negligence but rather by a
20              conscious and deliberate act, which unfairly frustrates the agreed
                common purposes and disappoints the reasonable expectations of
21              the other party thereby depriving that party of the benefits of the
                agreement.
22

23  *Chateau Chamberay Homeowners Ass'n v. Associated Int'l. Ins. Co.*, 90 Cal. App. 4th 335, 346

24  (Ct. App. 2001) (citing *Careau & Co. v. Sec. Pac. Business Credit, Inc.*, 222 Cal. App. 3d 1371,

24  1395 (Ct. App. 1990)). Here, Plaintiff has sufficiently alleged that American Safety acted

25  knowingly and deliberately to deny Plaintiff benefits. More specifically, Plaintiff alleges that

26

27                                                  16

28  Case No.: 14-CV-04074-LHK
    ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
    GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

1    American Safety had previously certified Plaintiff as an additional insured under the relevant

2    policies, FAC ¶ 12, but still refused to defend Plaintiff despite multiple tenders, and refused to pay

3    the attorney's fees and costs entered against Kenyon, *id.* ¶¶ 35–37.

4         Moreover, as Plaintiff argues in its opposition, whether American Safety acted

5    unreasonably is a question of fact. *See* ECF No. 28, at 14–15 (citing *Amadeo v. Principal Mut.*

6    *Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002)). To the extent American Safety contends that it

7    acted reasonably under the "genuine dispute doctrine," the Court agrees with Plaintiff that this

8    defense is a factual issue that cannot be adjudicated at the pleading stage. For instance, whether

9    American Safety acted reasonably under the genuine dispute doctrine requires finding, as a factual

10   matter, that American Safety fully investigated the possible bases of Plaintiff's claims. *See Jordan*

11   *v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1072–73 (Ct. App. 2007) ("[A]n insurer [must] *fully*

12   inquire into *possible* bases that *might* support the insured's claim.") (internal quotation marks

13   omitted). The Court cannot make such a determination at the pleading stage.

14        In sum, the Court denies American Safety's motion to dismiss Plaintiff's insurance bad

15   faith claim.

16        **5.  Declaratory Relief**

17        American Safety also moves to dismiss Plaintiff's claim for declaratory relief. American

18   Safety argues that Plaintiff has "fully matured causes of action seeking damages," and Plaintiff

19   therefore cannot pursue declaratory relief.[1]

20        The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy

21   within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal

22   relations of any interested party seeking such declaration, whether or not further relief is or could

23

24   _____

     [1] The FAC does not specify the statutory basis for Plaintiff's declaratory relief claims. As
25   Defendants removed this action on the basis of diversity jurisdiction, the Court concludes that the
     federal Declaratory Judgment Act governs in this case. *See In re Adobe Systems, Inc. Privacy*
26   *Litig.*, No. 13-5226, 2014 WL 4379916, at *11 (N.D. Cal. Sept. 4, 2014). Moreover, the Court
     notes that Defendant AIG Specialty correctly identified the federal Declaratory Judgment Act and
27   Federal Rules of Civil Procedure as controlling in this case. *See* ECF No. 23, at 21.

                                          17

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

1    be sought." 28 U.S.C. § 2201(a). To fall within the Act's ambit, the "case of actual controversy"

2    must be "'definite and concrete, touching the legal relations of parties having adverse legal

3    interests,' . . . 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive

4    character, as distinguished from an opinion advising what the law would be upon a hypothetical

5    state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (alteration in

6    original) (quoting *Aetna Life*, 300 U.S. at 240-241).

7            Here, Plaintiff seeks a determination of the "respective rights and obligations of defendants

8    under their respective policies." FAC ¶ 57. More specifically, Plaintiff argues that because

9    Defendant AIG Specialty contests whether the limits of all of the primary policies have been

10   exhausted, Plaintiff seeks declaratory relief in order to determine the amount of coverage owed

11   under each policy at issue. Plaintiff has therefore alleged the existence of an actual controversy

12   between the parties. *See MedImmune*, 549 U.S. at 127. As Plaintiff explains, declaratory relief will

13   resolve "the question of exhaustion of all primary policies, and the fact and extent of AISLIC's

14   liability under its umbrella policies." ECF No. 28, at 17. Unlike in *Britz Fertilizers, Inc. v. Bayer*

15   *Corp.*, 665 F. Supp. 2d. 1142, 1153 (E.D. Cal. 2009), on which American Safety relies, Plaintiff

16   seeks more than a simple declaration that Defendants breached their duties under their respective

17   insurance contracts. Instead, Plaintiff seeks declaratory relief to determine the limits of coverage

18   of the various primary policies, in order to determine the extent to which Defendant AIG Specialty

19   may be liable under its umbrella policies. The Court therefore finds that Plaintiff does not seek to

20   redress only past wrongs.

21           Moreover, under 28 U.S.C. § 2201(a), the Court has "unique and substantial discretion in

22   deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–

23   87 (1995). The mere availability of other appropriate remedies does not preclude declaratory

24   relief. *See Powell v. McCormack*, 395 U.S. 486, 499 (1969). Here, the Court finds that it would be

25   premature to dismiss Plaintiff's claim for declaratory relief, as at least one Defendant has argued

26   that a determination of the amount of coverage owed under each individual policy is a prerequisite

27                                                     18

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

to Plaintiff's direct action claims. *See also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1101 (N.D. Cal. 2006) (denying as premature motion to dismiss declaratory relief claim at pleading stage).

The Court therefore denies American Safety's motion to dismiss Plaintiff's claim for declaratory relief.

In sum, the Court grants American Safety's motion to dismiss Plaintiff's breach of contract claim in Plaintiff's capacity as an assignee. As amendment would not necessarily be futile, this dismissal is without prejudice. *See Carvalho*, 629 F.3d at 892–93. The Court denies the remainder of American Safety's motion to dismiss Plaintiff's FAC.

### B. AIG Specialty

Defendant AIG Specialty also moves to dismiss each one of Plaintiff's four claims against AIG Specialty. The Court addresses each claim below.

#### 1. Breach of Insurance Contract

As with Defendant American Safety, Plaintiff avers that it required Kenyon to name Plaintiff as an additional insured on Kenyon's general commercial liability insurance policies with AIG Specialty. *See* FAC ¶ 13. Plaintiff further alleges that it is entitled to bring a breach of insurance contract action against AIG Specialty as a contractual indemnitee and assignee. *Id.* ¶¶ 33, 42. AIG Specialty argues that Plaintiff's breach of contract claim fails on two grounds: (1) Plaintiff has failed to allege specific facts showing it is an additional insured; and (2) Plaintiff cannot state a breach of insurance contract claim as a contractual indemnitee as a matter of law.

First, the Court finds that Plaintiff has sufficiently averred that it is an additional insured under the policies issued by AIG Specialty. Plaintiff specifically alleges that it "is an additional insured under the terms of the policies issued by AMERICAN SAFETY, [AIG SPECIALTY], and ACE." *Id.* ¶ 13.[2] Nordby further alleges that Kenyon was required to "nam[e] Nordby as an

---

[2] Plaintiff incorrectly refers to AIG Specialty as AISLIC throughout its FAC. *See* ECF No. 27, at 1 n.1 ("Nordby used the acronym 'AISLIC' in its complaint, and so will continue to use that name

19

Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

1  additional insured with respect to liability arising out of KENYON's performance of the work."

2  *Id.* ¶ 11. On a motion to dismiss, the Court generally accepts as true Plaintiff's factual allegations.

3  *See Manzarek*, 519 F.3d at 1031. While AIG Specialty takes issue with the specificity of

4  Plaintiff's allegations, AIG Specialty does not offer judicially noticeable facts to contradict

5  Plaintiff's allegations. *See* ECF No. 23, at 11–12.

6         Moreover, Plaintiff attached as exhibits to its FAC copies of the four AIG Specialty

7  policies at issue. *See* FAC, Exhs. 3, 7–9. These exhibits may be considered on a motion to dismiss

8  under Rule 12(b)(6) without converting such a motion into a motion for summary judgment. *Parks*

9  *School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Exhibit 3, a copy of the

10  policy issued by AIG Specialty to Kenyon, includes an "Additional Insured Endorsement," which

11  "amended" "Section II - Who Is An Insured" to "include the person or organization shown in the

12  Schedule, but only with respect to liability arising out of your ongoing operations performed for

13  that insured." In the box marked "Schedule," on that same endorsement, is "Name of Person or

14  Organization: WHERE REQUIRED BY WRITTEN CONTRACT." ECF No. 15-3, ("Exh. 3"), at

15  25. Similarly, the umbrella insurance policies provide in relevant part that additional insureds

16  include any organization "to whom you are obligated by a written Insured Contract to provide

17  insurance such as is afforded by this policy . . . ." *See* ECF No. 15-7, ("Exh. 7"), at 7. Read in

18  conjunction with Plaintiff's allegation that Kenyon was obligated, as a condition of its

19  subcontractor agreement, to name Plaintiff as an additional insured, the Court finds that Plaintiff

20  has sufficiently alleged that it is an additional insured under the policies issued by AIG Specialty.

21         Second, AIG Specialty contends that a contractual indemnitee is not entitled to directly

22  pursue insurance policy benefits as a matter of law. *See* ECF No. 23, at 12. As a general matter, a

23  third-party claimant may only bring a direct action against a tortfeasor's insurance company if the

24  third party reduces its claim to a judgment and brings suit under § 11580, or the third party obtains

25

26

27  in this Opposition.").

28  Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

an assignment from the insured and then sues for breach of contract. *See Murphy v. Allstate*, 17

Cal. 3d 937, 942–44 (Cal. 1976). Here, Plaintiff has alleged its right to bring a direct action

against AIG Specialty "as an additional insured, contractual indemnitee and/or assignee of Kenyon

. . . ." FAC ¶ 42. Even assuming that AIG Specialty is correct that Plaintiff cannot bring a breach

of insurance contract claim in its capacity as a contractual indemnitee, AIG Specialty does not

explain or cite any authority for the proposition that Plaintiff's pleading in the alternative requires

dismissal of the claim as a whole. Here, the Court finds that Plaintiff has adequately pled that it is

an additional insured under AIG Specialty's policies. As such, Plaintiff has sufficiently alleged a

breach of insurance contract claim based on AIG Specialty's alleged breach of the duty to defend.

*See, e.g.*, *Presley Homes, Inc. v. Am. States Ins. Co.*, 90 Cal. App. 4th 571, 574–78 (Ct. App.

2001) (holding that insurer had broad duty to defend an additional insured).

Moreover, while Defendant AIG Specialty is correct that, as a general rule, third-party

claimants may not bring direct actions against insurers absent assignment or a final judgment,

there is an exception for third-party beneficiaries under general contract principles. *See, e.g.*,

*Campana v. Allstate Ins. Co.*, No. 01-1842, 2001 WL 1081595, at *2 (N.D. Cal. Sept. 12, 2003);

*Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1086–87 (Ct. App. 1997). Here, Plaintiff

alleges that the policies issued by AIG Specialty "expressly extend[] supplemental payments

coverage to contractual indemnitees." ECF No. 27, at 5. Under the "Supplementary Payments"

provision, the primary policy issued to Kenyon provides that "[i]f we defend an insured against a

'suit' and an indemnitee of the insured is also named as a party to the 'suit', we will defend that

indemnitee if all of the following conditions are met . . . ." FAC, Exh. 3, at 14. According to

Plaintiff, this provision reflects the intent of the contracting parties, Kenyon and AIG Specialty, to

treat Plaintiff as a third-party beneficiary. While AIG Specialty contests whether Plaintiff can

prove, as a factual matter, that the relevant conditions triggering AIG Specialty's duty to defend

Plaintiff as a contractual indemnitee were met, the Court concludes that AIG Specialty has not

shown that Plaintiff's claim must fail as a matter of law.

21

United States District Court
Northern District of California

The Court therefore denies AIG Specialty's motion to dismiss Plaintiff's breach of contract claim.[3]

### 2. Section 11580 Direct Action

As discussed above, to state a claim under § 11580, a plaintiff must allege:

> 1) [The plaintiff] obtained a judgment for bodily injury, death, or property damage,
>
> 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,
>
> 3) the liability insurance policy was issued by the defendant insurer,
>
> 4) the policy covers the relief awarded in the judgment, [and]
>
> 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Garamendi*, 116 Cal. App. 4th at 709–10. AIG Specialty contends that Plaintiff's § 11580 claim must be dismissed because: (1) Plaintiff failed to allege the amount of the judgment covered by AIG Specialty's policies; (2) Plaintiff cannot state a claim as a contractual indemnitee; (3) Plaintiff cannot state a claim as an assignee; and (4) Plaintiff cannot state a claim for recovery of fees and costs. The Court addresses each argument below.

First, the Court concludes that Plaintiff has pled the amount of the underlying judgment in the FAC. Plaintiff alleges that the arbitrator awarded Nordby $924,974.06 for the property damage

---

[3] AIG Specialty also, in a single sentence, requests that the Court "strike Plaintiff's reference to its alleged capacity as a contractual indemnitee" from the breach of contract claim. *See* ECF No. 23, at 13. A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996). As the parties heavily dispute whether, as a legal matter, a contractual indemnitee under the policies issued by AIG Specialty could bring a direct action for breach of contract, the Court finds that Plaintiff's allegation "might bear on an issue in the litigation," and therefore denies the request. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

1    arising out of Kenyon's work on the Summit State Project, and $174,808.10 in attorney's fees and

2    costs. FAC ¶ 22. Plaintiff alleges this award was confirmed by the Superior Court, minus a credit

3    for the $265,690.60 Kenyon contributed to the settlement, resulting in a "net judgment of

4    $834,091.50, plus interest." *Id.* ¶ 23. The Court concludes Plaintiff has alleged the existence of a

5    final judgment and its amount.

6          AIG Specialty contends that Plaintiff is obligated to plead how this judgment would be

7    divided up between the various insurance policies at issue. The Court finds no support for this

8    specific requirement. AIG Specialty cites *Wright v. Fireman's Fund Ins. Co.*, 11 Cal. App. 4th 998

9    (Ct. App. 1992), and California Civil Jury Instructions (CACI) § 2360, in support of its argument.

10   However, in *Wright*, the court reversed the grant of summary judgment in favor of plaintiffs,

11   holding that a stipulated judgment did not satisfy the "final judgment" element under § 11580 in

12   light of the potential for fraud and collusion. 11 Cal. App. 4th at 1024. The *Wright* court did not

13   hold that a plaintiff must specify how much of a final judgment each insurance policy allegedly

14   covers. While CACI § 2306 does provide that a plaintiff must prove the "amount of the judgment

15   [under the policy]," the Court notes that the model instruction also appears to assume that only a

16   single policy and insurer is involved. *See* CACI § 2360. AIG Specialty cites no additional

17   commentary or cases applying this particular instruction that conclude that a plaintiff must plead

18   how much of a judgment would be covered under different policies, when there are multiple

19   policies and insurers involved in a suit. To the contrary, the Court agrees with Plaintiff that this is

20   a primary legal and factual issue to be determined in this litigation. The Court therefore denies

21   AIG Specialty's motion to dismiss Plaintiff's § 11580 claim on this basis.

22          Second, AIG Specialty contends that Plaintiff cannot state a claim under § 11580 as a

23   contractual indemnitee. In support of its argument, AIG Specialty again relies on the general rule

24   that a third party may not bring a direct action for breach of contract or pursuant to § 11580 absent

25   a final judgment or assignment. Here, AIG Specialty does not challenge Plaintiff's ability to bring

26   a § 11580 claim based on an alleged final judgment, but rather contends that a contractual

27

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

1   indemnitee cannot bring a § 11580 claim as a matter of law. Section § 11580 provides a method

2   by which a third party claimant may bring a direct action against an insurance company, so long as

3   that third party claimant is a judgment creditor. *Murphy*, 17 Cal. 3d at 942 ("[Section 11580(b)(2)

4   makes the judgment creditor a third party beneficiary of the insurance contract between the insurer

5   and the insured."). As relevant here, § 11580 requires the liability policies at issue here to contain

6   a provision that:

7           whenever judgment is secured against the insured or the executor or
            administrator of a deceased insured in an action based upon bodily
8           injury, death, or property damage, then an action may be brought
            against the insurer on the policy and subject to its terms and
9           limitations, by such judgment creditor to recover on the judgment.

10   Cal. Ins. Code § 11580(b)(2). Plaintiff cites no authority holding that § 11580's explicit creation

11   of certain rights in judgment creditors also provides contractual indemnitees with the ability to

12   bring direct actions under § 11580. While the Court agrees with Plaintiff that contractual

13   indemnitees may have the ability to bring direct actions as third party beneficiaries, that does not

14   establish the ability of contractual indemnitees to bring § 11580 direct actions unless they are also

15   judgment creditors. The Court therefore grants AIG Specialty's motion to dismiss Plaintiff's

16   § 11580 claim based on Plaintiff's standing as a contractual indemnitee.

17           Third, the Court finds that Plaintiff cannot state a § 11580 claim as an assignee. Plaintiff

18   appears to be confusing the role of § 11580. As a general rule, third party claimants cannot bring

19   direct actions against insurers unless they are assignees, because the benefits of the contract flow

20   only to the insured. *See Murphy*, 17 Cal. 3d at 942. As discussed above, third party beneficiaries

21   are an exception to this general rule. *See id.* As a California Court of Appeal explained in *Harper*:

22           There are several exceptions to the general rule which prohibits a
            third party claimant from suing an insurer. For example, once a
23           party has a final judgment against the insured, the claimant becomes
            a third party beneficiary of the insurance policy and may enforce the
24           terms which flow to its benefit pursuant to Insurance Code § 11580.

25   *Harper*, 56 Cal. App. 4th at 1086–87. Here, Plaintiff has alleged a claim for breach of contract as

26   an assignee, a "direct action" against an insurer. Plaintiff has also alleged a claim under § 11580 as

27                                                    24

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

1   a judgment creditor, another "direct action" against an insurer. This does not mean, however, that

2   Plaintiff can bring a claim under § 11580 as an assignee. It may be the case that Plaintiff's alleged

3   status as both an assignee and a judgment creditor affects the scope of Plaintiff's recovery against

4   AIG Specialty, but it does not change the plain function of the statute, which is to provide a

5   method for third party judgment creditors to directly sue insurers. The Court therefore grants AIG

6   Specialty's motion to dismiss Plaintiff's § 11580 claim brought in Plaintiff's capacity as an

7   assignee.

8          Fourth, AIG Specialty contends that Plaintiff is an "incidental beneficiary" of the insurance

9   contracts and therefore cannot recover attorney's fees or costs as a portion of the Underlying

10  Judgment. AIG Specialty's argument is identical to American Safety's argument, which the Court

11  rejected above. Here, Plaintiff alleges that it is an assignee, a party to the contract as an additional

12  insured, and a contractual indemnitee. *See* FAC ¶¶ 11–12. As such, Plaintiff has sufficiently

13  alleged that it is not an "incidental beneficiary," such that Plaintiff could not benefit from the duty

14  to defend. *See San Diego Housing*, 95 Cal. App. 4th at 675. As AIG Specialty cites no additional

15  or contrary authority, the Court denies AIG Specialty's motion to dismiss Plaintiff's § 11580

16  claim for attorney's fees and costs for the reasons discussed above. *See supra* Part A.3.

17         In sum, the Court grants in part and denies in part AIG Specialty's motion to dismiss

18  Plaintiff's § 11580 claim. The Court grants AIG Specialty's motion to dismiss Plaintiff's § 11580

19  claim based on Plaintiff's alleged status as an assignee or contractual indemnitee. The Court

20  denies AIG Specialty's motion to dismiss Plaintiff's § 11580 claim as a matter of law, as Plaintiff

21  has alleged it is a final judgment creditor. The Court also denies AIG Specialty's motion to

22  dismiss Plaintiff's § 11580 claim insofar as Plaintiff seeks recovery of attorney's fees and costs.

23         As amendment of Plaintiff's § 11580 claim, insofar as Plaintiff alleges standing in its

24  capacity as an assignee or contractual indemnitee, would be futile, this dismissal is with prejudice.

25  *See Carvalho*, 629 F.3d at 892–93.

26

27                                                                25

28  Case No.: 14-CV-04074-LHK
ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

### 3. Insurance Bad Faith

As discussed above with regards to Defendant American Safety, to state a claim for insurance bad faith, a party must show that (1) benefits due under the policy were withheld; and (2) the reason for withholding the benefits was unreasonable or without proper cause. *See Guebara*, 237 F.3d at 992.

First, AIG Specialty argues that Plaintiff cannot state a claim for insurance bad faith absent a valid claim for breach of insurance contract. Here, however, the Court has denied AIG Specialty's motion to dismiss Plaintiff's breach of contract claim. As AIG Specialty offers no other argument as to why Plaintiff's insurance bad faith claim should be dismissed, the Court denies AIG Specialty's motion to dismiss Plaintiff's insurance bad faith claim on this basis.

Second, AIG Specialty contends that Plaintiff has made only conclusory allegations and pled insufficient facts to support its insurance bad faith claim. A claim for insurance bad faith lies when:

> the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Chateau Chamberay Homeowners*, 90 Cal. App. 4th at 346. Here, the Court finds that Plaintiff has sufficiently alleged that AIG Specialty wrongfully denied coverage to Kenyon, declined Kenyon's tender of defense, and ignored Plaintiff's request for payment on the judgment. FAC ¶¶ 29, 32, 39. Moreover, Plaintiff alleges that AIG Specialty breached duties owed to Plaintiff as an assignee, additional insured, and contractual indemnitee by:

> a. Unreasonably, and without proper cause, refusing to pay damages and/or attorney's fees and costs awarded to NORDBY in the Underlying Litigation.
>
> b. Unreasonably, and without proper cause, refusing to indemnify KENYON against the judgment entered against KENYON in the Underlying Action.

26

United States District Court
Northern District of California

c. Unreasonably, and without proper cause, forcing Plaintiff, as additional insured, contractual indemnitee, intended beneficiary, final judgment creditor and/or assignee, to institute litigation to obtain benefits clearly due under the policies.

FAC ¶ 52. In conjunction with Plaintiff's specific factual allegations regarding AIG Specialty's denial of coverage, declination of defense, and silence as to Plaintiff's request for payment, the Court concludes that Plaintiff has stated a "plausible claim for relief." *Twombly*, 550 U.S. at 570.

Third, AIG Specialty contends that Plaintiff has failed to sufficiently allege that it is an additional insured under the policies AIG Specialty issued, defeating Plaintiff's bad faith claim on that basis. As this argument is identical to AIG Specialty's argument with respect to Plaintiff's breach of insurance contract claim, the Court denies AIG Specialty's motion to dismiss on this basis for the reasons stated above. *See supra* Part B.1.

Fourth, AIG Specialty moves to dismiss Plaintiff's bad faith claim insofar as Plaintiff relies on its standing as a contractual indemnitee. However, AIG Specialty's argument wrongly assumes that a contractual indemnitee cannot be a third party beneficiary to an insurance agreement. The authority that AIG Specialty cites *Northwestern Mutual Insurance Co. v. Farmers Insurance Group*, 76 Cal. App. 3d 1031, 1042 (Ct. App. 1978), explicitly notes that "in appropriate cases, the right of a third party beneficiary to enforce the contract extends to implied covenants." As AIG Specialty does not contest that Plaintiff alleges it is a third party beneficiary to the relevant insurance contracts, the Court concludes that Plaintiff's bad faith claim brought in its capacity as a contractual indemnitee does not fail as a matter of law. The Court therefore denies AIG Specialty's motion to dismiss Plaintiff's bad faith claim on this ground.

Fifth, AIG Specialty argues that Plaintiff has failed to plead that AIG Specialty acted with the requisite malice to support an award of punitive damages. AIG Specialty cites California cases describing the heightened pleading standard required for punitive damages under California law. *See, e.g., Flyer's Body Shop Profit Sharing Plan v. Ticor Title Ins. Co.*, 185 Cal. App. 3d 1149, 1154 (Ct. App. 1987); *see also* Cal. Civ. Code § 3294. However, as numerous other district courts in this Circuit have concluded, California's heightened pleading requirements for punitive

27

United States District Court
Northern District of California

1    damages conflict with Federal Rules of Civil Procedure 8 and 9, the rules governing federal

2    pleading standards. *See, e.g.*, *Kelley Moore Paint Co., Inc. v. Nat'l Union Fire Ins. Co.*, No. 14-

3    1797, 2014 WL 2119996, at *3 (N.D. Cal. May 21, 2014) (citing *Tamburri v. Suntrust Mortg'g,*

4    *Inc.*, No. 11-2899, 2012 WL 3582924, at *3 (N.D. Cal. Aug 20, 2012); *Clark v. Allstate Ins. Co.*,

5    106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000); *Somera v. Indymac Fed. Bank, FSB*, No. 09-1947,

6    2010 WL 761221 (E.D. Cal. Mar. 3, 2010)). In federal court, a plaintiff "may include a 'short and

7    plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of

8    malice or fraudulent intent." *Clark*, 106 F. Supp. 2d at 1018. As such, Plaintiff's "short and plain

9    prayer for punitive damages" is sufficient. The Court therefore denies AIG Specialty's motion to

10   dismiss on this basis.

11        Sixth, AIG Specialty contends that Plaintiff's punitive damages request must be dismissed

12   because assignees cannot recover punitive damages under California law. However, as Plaintiff

13   notes in its opposition, Plaintiff does not request the award of punitive damages in its capacity as

14   an assignee, but rather solely as an "additional insured, contractual indemnitee, intended

15   beneficiary and/or final judgment creditor." FAC ¶ 54. In light of Plaintiff's specific prayer for

16   relief and AIG Specialty's failure to respond to this argument in its reply, the Court concludes that

17   AIG Specialty's argument is inapplicable. The Court therefore denies AIG Specialty's motion to

18   dismiss on this basis.

19        In sum, the Court denies AIG Specialty's motion to dismiss Plaintiff's bad faith claim in

20   its entirety.

21        **4.  Declaratory Relief**

22        AIG Specialty moves to dismiss Plaintiff's claim for declaratory relief. As AIG Specialty's

23   arguments are functionally identical to the arguments raised by American Safety, the Court denies

24   AIG Specialty's motion for the reasons stated above. *See supra* Part A.5.

25        The Court does note, however, that Plaintiff specifically argues that it only amended its

26   original Complaint to add a claim for declaratory relief after AIG Specialty contended in its first

27                                                    28

28   Case No.: 14-CV-04074-LHK
     ORDER GRANTING IN PART AND DENYING IN PART AMERICAN SAFETY'S MOTION TO DISMISS;
     GRANTING IN PART AND DENYING IN PART AIG SPECIALTY'S MOTION TO DISMISS

United States District Court
Northern District of California

motion to dismiss that "the issue of coverage under its umbrella policies was not properly the subject of a breach of contract claim because the limits of all primary policies had not yet been fully exhausted." ECF No. 27, at 18 (citing AIG Specialty's first motion to dismiss, ECF No. 8, at 12–14). In other words, AIG Specialty appeared to argue that whether or not it had breached any provision of its three umbrella liability policies would not be ripe until the Court adjudicated the coverage due under AIG Specialty's, American Safety's, and ACE's primary liability policies. In response to Plaintiff's argument, AIG Specialty now contends that the amount of coverage owed under each policy is the "precise question [that] will be determined by the adjudication of Plaintiff's cause of action under Insurance Code § 11580," therefore obviating the need for declaratory relief. ECF No. 29, at 14.

The Court finds that AIG Specialty's contradictory arguments only further support the Court's conclusion that declaratory relief would not necessarily be duplicative here. As to Plaintiff's § 11580 claim, which AIG Specialty now contends is the "precise question" that will resolve the amount of coverages per policy, AIG Specialty argues in this same motion to dismiss that Plaintiff's failure to allege the specific amount of coverage due per policy defeats Plaintiff's § 11580 claim as a matter of law. *See supra* Part B.2. These inconsistent arguments put Plaintiff in an impossible position and reflect the likely existence of a genuine controversy between the parties. As such, the Court concludes it would be premature to dismiss Plaintiff's claim for declaratory relief.

The Court therefore denies AIG Specialty's motion to dismiss Plaintiff's claim for declaratory relief.

In sum, the Court grants with prejudice AIG Specialty's motion to dismiss Plaintiff's § 11580 claim based on Plaintiff's capacity as an assignee or contractual indemnitee. The Court denies AIG Specialty's motion to dismiss in all other respects.

## IV. CONCLUSION

For the reasons stated above, the Court dismisses with prejudice Plaintiff's breach of

29

1   contract claim against American Safety brought in Plaintiff's capacity as an assignee. The Court

2   denies American Safety's motion to dismiss in all other respects.

3         The Court dismisses with prejudice Plaintiff's § 11580 claim against AIG Specialty

4   brought in Plaintiff's capacity as an assignee or contractual indemnitee. The Court denies AIG

5   Specialty's motion to dismiss in all other respects.

6   **IT IS SO ORDERED.**

7   Dated: March 19, 2015

8                                         _Lucy  H.  Koh_____

9                                         LUCY H. KOH
                                          United States District Judge

United States District Court
Northern District of California