1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

NORDBY CONSTRUCTION, INC.,

Plaintiff,

v.

AMERICAN SAFETY INDEMNITY
COMPANY, et al.,
　　　　　　Defendants.

Case No.  14-CV-04074-LHK

**ORDER GRANTING MOTION TO
DISMISS WITH PREJUDICE**

Re: Dkt. No. 35

　　　Plaintiff Nordby Construction, Inc. ("Plaintiff" or "Nordby") brings this action for breach of insurance contract against Defendants American Safety Indemnity Co. ("American Safety"), American International Specialty Lines Insurance Company ("AIG Specialty"), and Ace American Insurance Company ("ACE"). Before the Court is Defendant ACE's motion to dismiss Plaintiff's First Amended Complaint. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS with prejudice the motion to dismiss.

**I.   BACKGROUND**

　　**A.  Factual Background**

　　　Plaintiff Nordby was hired by Summit State Bank as the general contractor to construct the Summit State Project. First. Am. Compl. ("FAC"), ¶ 10. Plaintiff subcontracted with Kenyon Construction, Inc. ("Kenyon") to "furnish and install a 'complete weather tight and watertight'

EIFS system on the exterior" of the Summit State Project. *Id.* Plaintiff's subcontractor agreement with Kenyon required Kenyon to:

> (a) procure and maintain a policy of commercial general liability insurance, with minimum limits of $1 million per occurrence and $1 million in the aggregate for completed operations, naming [Plaintiff] as an additional insured . . .
>
> (b) include, in the required insurance, a provision stipulating that the coverage provided to [Plaintiff] as an additional insured is primary and non-contributing with any other insurance available to [Plaintiff] or the owner of the Summit State Project;
>
> (c) include, in the required insurance, completed operations coverage, broad form property damage coverage, and contractual liability coverage with respect to all operations by or on behalf of [Kenyon]; and
>
> (d) defend and indemnify [Plaintiff] against any loss of liability arising out of, or in connection with, [Kenyon's] operations to be performing under the agreement.

*Id.* ¶ 11.

On or about July 26, 2002, Plaintiff received a certificate of insurance certifying Kenyon was insured by Defendant American Safety for the period from July 1, 2002 to July 1, 2003 under a policy of commercial general liability insurance with $1 million dollar limits per occurrence and in the aggregate. *Id.* ¶ 12. The certificate also certified that Plaintiff was an additional insured, and that the coverage was primary and non-contributing. *Id.* Plaintiff also alleges that it is "an additional insured under the terms of the policies issued by" Defendant AIG Specialty and ACE. *Id.* ¶ 13.

Plaintiff constructed the Summit State Project "largely in 2002," which is the period of time during which Kenyon provided its services under the subcontractor agreement. *Id.* ¶ 14. The "Notice of Completion" was recorded on February 27, 2003. *Id.*

### 1. Underlying Litigation

Following the completion of construction, Summit State Bank "observed water intrusion" and filed suit against Plaintiff and its subcontractors. *Id.*; *see also Summit State Bank v. Nordby Construct. Co.*, No. SCV-249420 (Sonoma Cnty. Sup. Ct.). Summit State Bank determined that

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

the water intrusion was related to the EIFS exterior installed by Kenyon, and that the entire EIFS system had to be removed and replaced. *Id.* ¶ 17. Plaintiff filed a cross-complaint for indemnity against Kenyon. *Id.* ¶ 15. Plaintiff also tendered its defense to Kenyon. *Id.* Plaintiff alleges that "[t]he tenders of defense were all denied," and Plaintiff had to defend itself in the state court action. *Id.*

Plaintiff settled the state court action with Summit State Bank for $3.4 million dollars, with Plaintiff responsible for $649,000, Kenyon responsible for $285,000, and the other subcontractors contributing the balance. *Id.* ¶ 18. The settlement did not resolve Plaintiff's claims against Kenyon. *Id.* Nordby avers that Kenyon was defended in the underlying state court action by American Safety under a policy of commercial general liability insurance. *Id.* ¶ 19. American Safety allegedly exhausted all but $256,690.60 of the policy's limit at the time of settlement. *Id.* As Kenyon owed $285,000 under the terms of the settlement, Nordby contributed the additional $19,309.40 difference between Kenyon's settlement obligations and the remaining insurance funds. *Id.*

In or about August 2012, Nordby and Kenyon entered into a partial settlement agreement in which Kenyon assigned its rights against all of its liability insurers to Nordby, in exchange for "certain material concessions." *Id.* ¶ 33. Those concessions included Nordby's payment of the $19,309.40 owed by Kenyon, crediting Kenyon for the $265,690.60 contribution against any arbitration award entered in Nordby's favor, and Nordby's agreement not to execute any award against Kenyon's non-insurance assets. *Id.* ¶ 34. As a condition of settlement, Kenyon and Plaintiff agreed to arbitrate Plaintiff's claims for defense and indemnification. *Id.* ¶ 20. Kenyon and Nordby arbitrated the claims on September 12, 2012, and the arbitrator rendered a decision on September 18, 2012. *Id.* The arbitrator found that Kenyon had failed to properly install the EIFS system, resulting in "significant water intrusion." *Id.* ¶ 20. The arbitrator awarded Nordby damages in the amount of $924,974.06, and attorney's fees and costs in the amount of $174,808.10. *Id.* ¶ 21. According to Plaintiff, the Superior Court confirmed the arbitration award and entered the award as a judgment on January 9, 2013. *Id.* ¶ 23. The Superior Court credited

3

1  Kenyon for the $265,690.60 Kenyon contributed to the settlement of the underlying state court

2  action with Summit State Bank, "resulting in a net judgment of $834,091.50, plus interest on that

3  amount at the legal rate of 10 percent per annum from September 12, 2012." *Id.* According to

4  Plaintiff, the amount currently due exceeds $950,000. *Id.*

5  **2.  Defendants' Insurance Policies and Tender Responses**

6  Plaintiff alleges that Defendant American Safety insured Kenyon under two primary

7  policies of commercial general liability insurance effective July 1, 2002 to July 1, 2003 (Policy

8  XGI 02-1747-003), and July 1, 2003 to July 1, 2004 (Policy XGI 03-1747-004). *Id.* ¶ 25.

9  American Safety allegedly agreed to defend Kenyon under the 2002–03 policy, but denied

10  coverage under the 2003–04 policy. *Id.* Plaintiff believes both policies carried limits of $1 million

11  dollars per occurrence, "exclusive of defense and other supplementary payments coverage," and

12  that both polices are now "exhausted with respect to [Kenyon's] legal obligation to pay damages."

13  *Id.* Plaintiff further alleges that American Safety exhausted its policy limit under the 2002–03

14  policy before the arbitration, but only exhausted its policy limit under the 2003–04 policy after the

15  arbitration. *Id.* ¶¶ 26–27.

16  Plaintiff first tendered its defense to American Safety under the 2002–03 and 2003–04

17  policies on or about June 2, 2011. *Id.* ¶ 35. According to Plaintiff, it was entitled to a defense and

18  indemnification under these policies as an additional insured and a contractual indemnitee of the

19  named insured, Kenyon. *Id.* American Safety "ignored" the tender. *Id.* Plaintiff again tendered its

20  defense to American Safety on or about September 29, 2011, November 8, 2011, and January 2,

21  2012, and American Safety allegedly ignored these tenders as well. *Id.* On or about December 16,

22  2013, Nordby tendered the judgment entered against Kenyon, requesting payment of the attorney's

23  fees and costs awarded against Kenyon. *Id.* ¶ 37.

24  As to Defendant AIG Specialty, Plaintiff alleges that AIG Specialty insured Kenyon under

25  a primary policy of commercial general liability effective July 1, 2004 to July 15, 2005 (Policy GL

26  933-32-99). *Id.* ¶ 29. Defendant AIG Specialty denied coverage to Kenyon, and declined

27  Kenyon's tender of defense. *Id.* The AIG Specialty policy carried a liability limit of $1 million

28

United States District Court
Northern District of California

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

dollars per occurrence, "exclusive of defense and other supplementary payments coverage." *Id.*
AIG Specialty also allegedly insured Kenyon under three policies of umbrella liability insurance
effective July 1, 2002 to July 1, 2003 (Policy BE 7413924), July 1, 2003 to July 1, 2004 (Policy
BE 9745186), and July 1, 2004 to July 1, 2005 (Policy BE 9745761). *Id.* ¶ 32. Plaintiff avers that
AIG Specialty denied coverage under the umbrella policies, claiming that Kenyon had not
exhausted its primary insurance coverage. *Id.* Each umbrella policy carries a liability limit of $5
million dollars. *Id.*

On or about January 20, 2014, Nordby tendered to AIG Specialty the judgment entered
against Kenyon in the underlying state court action. *Id.* ¶ 39. AIG Specialty has refused to pay any
portion of the judgment awarded against Kenyon. *Id.*

Defendant ACE allegedly insured Kenyon under three primary policies of commercial
general liability insurance effective July 15, 2005 to July 15, 2006 (Policy HDO G205909097A) ,
July 15, 2006 to July 15, 2007 (Policy HDO G21702390), and July 15, 2007 to July 15, 2008
(Policy HDO G2451027A). *Id.* ¶ 30. ACE denied coverage under all three policies and declined
Kenyon's tender of defense. *Id.* Plaintiff alleges that each policy carries a limit of $1 million
dollars per occurrence, exclusive of defense and other supplementary payments coverage. *Id.*
Plaintiff further alleges that the 2005–06 and 2007–08 policies had "designated work exclusions
precluding coverage for the Summit State Bank project," but that the 2006–07 policy did not have
such an exclusion. *Id.*

On or about January 20, 2014, Nordby tendered to ACE the judgment entered against
Kenyon in the underlying state court action. *Id.* ¶ 40. ACE rejected the request for payment,
claiming that its policies had an applicable designated work exclusion. *Id.* Plaintiff requested a
copy of the exclusion for the 2006–07 policy, but received no response. *Id.*

**B.  Procedural Background**

Plaintiff Nordby filed its complaint in Santa Clara County Superior Court on June 25,
2014. ECF No. 1. Defendant AIG Specialty removed the action to federal court on September 8,
2014. *Id.* Defendant American Safety filed its consent to removal on September 24, 2014. ECF

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   No. 12. Defendant ACE filed its consent to removal on January 6, 2015. ECF No. 38.

2          Defendants AIG Specialty and American Safety filed motions to dismiss on September 15,

3   2014. ECF Nos. 7, 8. Plaintiff filed oppositions on September 29, 2014. ECF Nos. 13, 14. Plaintiff

4   filed its First Amended Complaint ("FAC"), that same day. ECF No. 15. On October 6, 2014, the

5   Court granted the parties' stipulation to the withdrawal of Defendants AIG Specialty's and

6   American Safety's motions to dismiss in light of the FAC. ECF No. 20.

7          Defendants AIG Specialty and American Safety filed motions to dismiss on November 5,

8   2014. ECF Nos. 23, 24. Plaintiff filed its oppositions on November 19, 2014, ECF Nos. 27, 28.

9   Defendants AIG Specialty and American Safety replied on November 26, 2014. ECF Nos. 29, 30.

10  The Court granted in part and denied in part Defendant AIG Specialty's and American Safety's

11  motions on March 19, 2015. ECF No. 56.

12         Defendant ACE filed the instant motion to dismiss on January 6, 2015. ECF No. 35.

13  Plaintiff filed its opposition on January 20, 2015. ECF No. 45. Defendant Ace replied on January

14  27, 2015.

15  **II.  LEGAL STANDARD**

16      **A.  Rule 12(b)(6)**

17         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

18  action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

19  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

20  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

21  defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

22  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

23  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes

24  of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

25  true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek*

26  *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

27         Nonetheless, the Court need not accept as true allegations contradicted by judicially

28

United States District Court
Northern District of California

6

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Shwarz*, 234 F.3d at 435. Nor is the Court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal*, 556 U.S. at 663–64.

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

Here, Plaintiff alleges claims for breach of insurance contract, direct action under California Insurance Code § 11580, insurance bad faith, and declaratory relief against all three Defendants. Defendant ACE moves to dismiss all of Plaintiff's claims.

Before the Court turns to the substance of ACE's motion to dismiss, the Court summarizes some basic principles of insurance law in California. Under California law, an insurer has a broad

7

United States District Court
Northern District of California

1    duty to defend insured entities against claims that create a potential for indemnity. *See Montrose*

2    *Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993). The duty to defend is broader than the duty to

3    indemnify. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). While the duty

4    to defend is broad, it is not unlimited. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19

5    (1995). In determining whether there is a duty to defend, courts must look to the complaint in the

6    underlying litigation and "all facts known to the insurer from any source." *See Montrose Chem.*

7    *Corp.*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to the defendant at the

8    time it refused to defend the underlying lawsuit created the potential for coverage under the policy.

9    *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (Ct. App. 1995).

10        If there was no potential for coverage under the insurance policy based on the underlying

11   complaint and extrinsic facts made known to the insurer, then the insurer has not breached the

12   insurance contract by refusing to defend. *See Montrose Chem. Corp.*, 6 Cal. 4th at 295. The

13   insured has the burden of adequately alleging that there was an "occurrence." *See Blue Ridge Ins.*

14   *Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998). Furthermore, "a bad faith claim cannot be

15   maintained unless policy benefits are due." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136,

16   1153 (1990).

17        In interpreting an insurance policy, the Court first looks to the language of the policy itself.

18   The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense

19   . . . controls judicial interpretation unless [the disputed terms are] used by the parties in a technical

20   sense, or unless a special meaning is given to them by usage." *See Montrose Chem. Corp. v.*

21   *Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995). "If the meaning a layperson would ascribe to the

22   language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Id.*

23   at 666–67. "[I]f the disputed terms are ambiguous, a court must attempt to resolve the ambiguity

24   by adopting the meaning that reflects the objectively reasonable expectations of the insured."

25   *Flintkote Co. v. Gen. Acc. Assur. Co.*, 410 F. Supp. 2d 875, 881 (N.D. Cal. 2006). "[I]f the court is

26   unable to determine the objective expectations of the insured, the ambiguity is resolved against the

27   insurer." *Id.* at 882.

28

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    In the instant motion to dismiss, ACE contends that Plaintiff has pled facts establishing

2    that ACE has no duty to indemnify under each Deductible Endorsement of the 2005–06, 2006–07,

3    and 2007–08 policies. Plaintiff disputes whether the Deductible Endorsements are enforceable

4    against it, whether ACE is vicariously liable for coverage, and whether ACE owes Plaintiff

5    coverage under the supplemental payments provision notwithstanding the Deductible

6    Endorsements. The Court addresses each argument below.

7    **A. Deductible Endorsements**

8    Here, the Court begins with the relevant contractual language. The Deductible

9    Endorsement of the 2005–06 policy provides for a "Deductible Per Occurrence" of $2 million

10   dollars, identifies ESIS, Inc. as the "Claims Service Organization," and further states:

> 2. **In the event you are unable to pay the Deductible amount or any portion thereof, our obligation to pay damages to satisfy a judgment or pay a settlement shall include the Deductible amount** or any portion thereof. However, our obligation to pay damages under this policy shall not exceed the Limits of Insurance as set forth in the policy declarations.
>
> 3. Our obligation under Section 1 - Coverages, Supplementary Payments - Coverages A and B of this policy has not changed.
>
> 4. You and we mutually agree that the Claim Service Organization shown in the Schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy.
>
> 5. **You agree with us that we shall not have any duty to defend any such "suit."**
>
> 6. **You agree with us that we shall have no duty to pay any "allocated loss adjustment expense" within the deductible amounts with respect to any claim or "suit".**
>
> 7. **You will pay all sums that the insured becomes legally obligated to pay within the Deductible Per Occurrence and all "allocated loss adjustment expenses" related to such claims**.

24   FAC, Exh. 4, at 25 (emphasis added).

25   Similarly, the Deductible Endorsements of the 2006–07 and 2007–08 policies, which are

26   identical, also require a $2 million dollar deductible and further state:

27

28
Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

**1. Our obligation to pay damages and "allocated loss adjustment expense" under this policy applies only to the amount of damages and "allocated loss adjustment expense" in excess of the Deductible amount stated in the Schedule above.** The Limits of Insurance will be reduced by the amount of damages and medical expenses included in the Deductible. The Deductible Per Occurrence shall apply separately to:

a. The sum of all damages and "allocated loss adjustment expense" under Coverage A and medical expenses under Coverage C arising out of any one "occurrence", and

b. The sum of all damages and "allocated loss adjustment expense" under Coverage B sustained by any one person or organization.

2. You and we mutually agree that the Claim Service Organization shown in the schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suit" arising under this policy. Accordingly, y**ou agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".**

**3. You will pay all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence.**

FAC, Exh. 6, at 31.

ACE contends that the plain, express language of its insurance policies preclude Plaintiff's claims as each policy requires Kenyon, the named insured, to pay amounts up to $2 million dollars before ACE is obligated. Plaintiff alleges that the Underlying Judgment is $834,091.50, plus interest at the legal rate of 10% per annum from September 12, 2012, with the amount due currently exceeding $950,000. FAC ¶ 23. Based on these allegations, ACE contends that Plaintiff cannot state a claim against ACE in excess of $2 million dollars, excluding coverage under the policies. ACE further argues that Plaintiff cannot allege, as a matter of law, that Kenyon is "unable to pay the Deductible Amount," as required under the 2005–06 policy.

The Court finds that the clear and unambiguous language of the 2005–06, 2006–07, and 2007–08 policies preclude Plaintiff's claims. The 2005–06 Deductive Endorsement provides that Kenyon is responsible for paying "all sums the insured becomes legally obligated to pay within the Deductible Per Occurrence." FAC, Exh. 4, at 25. Additionally, the 2006–07 and 2007–08 Deductible Endorsements explicitly provide that the coverage provided by the policies is only "in

10

1    excess of" the $2 million dollar deductible. Where, as here, the language of an insurance contract

2    is clear and unambiguous, the court must apply the plain meaning of the contract. *See Montrose*

3    *Chem.*, 10 Cal. 4th at 666. As Plaintiff has affirmatively alleged a judgment amount far less than

4    the $2 million dollar deductible, ACE's policies do not provide any coverage in the first instance,

5    as they explicitly apply only when the "damages" or the "allocated loss adjustment expense"

6    exceed $2 million dollars.

7         Plaintiff appears to recognize that the plain language of the contract precludes coverage, as

8    Kenyon neither paid the $2 million dollar deductible nor can Plaintiff allege damages in excess of

9    $2 million dollars. Instead, Plaintiff raises a variety of arguments as to why coverage should be

10   required nonetheless. The Court finds that Plaintiff's arguments are unavailing.

11        First, Plaintiff contends that "fronting" policies guarantee coverage to judgment creditors.

12   Here, the parties agree that the function of the Deductible Endorsements is to create a type of

13   "fronting" policy, whereby Kenyon did not actually shift the risk of loss to ACE. As the policies

14   provided $2 million dollars in liability coverage, but did so only after Kenyon paid a $2 million

15   dollar deductible, the effect was to allow Kenyon to functionally self-insure. Plaintiff argues that

16   "fronting" policies must guarantee coverage to third parties regardless of the specific provisions

17   contracted for in each policy. In support of its argument, Plaintiff quotes W. Croskey and R.

18   Heeseman, California Practice Guide: Insurance Litigation § 1.53.10–11 (2014), which describes

19   "fronting" arrangements as contracts where the insured "*agrees to indemnify* the insurer for any

20   loss paid by the insurer." The treatise goes on to explain that the purpose of "fronting" policies is

21   to allow companies to comply with statutory filing requirements "because the insurance company

22   is responsible in the first instance to pay a loss covered by a policy." *Id.*

23        However, this general description of fronting arrangements in the abstract does not vitiate

24   the Court's obligation to examine the explicit language of the contract itself. *See AIU Ins. Co. v.*

25   *Sup. Ct.*, 51 Cal. 3d 807, 821–22 (1990). As ACE notes, the insurance contracts clearly state that

26   Kenyon "will pay all sums the insured becomes legally obligated to pay within the Deductible Per

27   Occurrence." FAC, Exh. 6, at 31; *Id.*, Exh. 4, at 25. The 2005–06 policy provides that ACE is only

28   

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

obligated to pay amounts within the $2 million dollar deductible if Kenyon is "unable to pay." FAC, Exh. 4, at 25. The 2006–07 and 2007–08 policies explicitly state that coverage is "in excess" of the deductible. *Id.*, Exh. 6, at 31. None of these policies use the structure of the "fronting arrangement" that Croskey and Heeseman describe. The general examples of fronting arrangements that Plaintiff rely on assume that there are two separate contracts between the insured and the insurer. In the only actual example given, Croskey and Heeseman describe a fronting arrangement as one where the insured purchases liability insurance for claims the insured wishes to self insure, and then "enters into a *separate indemnification agreement* with [the] Insurance Company." W. Croskey and R. Heeseman, California Practice Guide: Insurance Litigation § 7.392. In that example, the function of the two agreements is for the insurance company to pay any claims, and then seek indemnification from the insured. There is no such agreement at issue here. Plaintiff's reliance on a general description of one particular type of fronting arrangement, which Plaintiff concedes is not equivalent to the actual policies at issue here, is insufficient to show that ACE has a duty to indemnify.

Moreover, Plaintiff cites *Hewlett-Packard Co. v. Cigna Property & Casualty Insurance Co.*, No. 99-20207, 2000 WL 255990 (N.D. Cal. Aug. 24, 1999), and *Padilla Construction Co., Inc. v. Transportation Insurance Co.*, 150 Cal. App. 4th 984, 1002 n.17 (Ct. App. 2007), but those cases are inapposite. Generic definitions of how fronting policies attempt to satisfy state "financial responsibility" laws cannot change the nature of ACE's obligations under its insurance agreements with Kenyon. *See Hewlett-Packard*, 2000 WL 255990, at *8 (defining fronting policies as a general matter). Furthermore, the *Padilla* court acknowledged that there are variations in types of fronting policies, noting that "[f]ronting policies of the kind described in *Aerojet-General* guarantee that the claims of injured third parties with the insured being liable to the fronting insurer for reimbursement of anything it might pay out by way of both indemnification and defense." 150 Cal. App. 4th at 1002 n.17 (citing *Aerojet-Gen. v. Transp. Indem. Co.*, 17 Cal. 4th 38 (1997)). The fronting policies at issue in *Aerojet-General* required the insurer to pay claims within the deductible when the insured was in default, and gave the carrier the right to

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   reimbursement. *See* 17 Cal. 4th at 49–50. While Plaintiff might be correct that certain types of

2   fronting arrangements, for instance the policies at issue in *Aerojet-General*, could support

3   Plaintiff's claims, Plaintiff has failed to explain how the contracts at issue here are akin to those

4   policies.

5          Second, Plaintiff argues that only the named insured and not the additional insured "have

6   the responsibility to pay the deductible," as a matter of law. In support of this argument, Plaintiff

7   cites *Hartford Accident & Indemnity Co. v. U.S. Natural Resources, Inc.*, 897 F. Supp. 466, 473

8   (D. Or. 1995). In *Hartford*, an insurer sought reimbursement of the deductible amount after

9   settling a claim on behalf of the additional insured. *Id.* The named insured, USNR, argued that the

10  additional insured should be responsible for paying the deductible amount. *Id.* In reading the plain

11  language of the policy, the *Hartford* court concluded that USNR was responsible for the

12  deductible. *Id.* More specifically, the policy's provision that "the *named insured* shall promptly

13  reimburse the [insurer] for such part of the deductible amount as has been paid by the [insurer]"

14  defeated USNR's argument. *Id.* Insofar as the *Hartford* court commented on USNR being a "party

15  to the contract," the Court notes that the *Hartford* court did so only to clarify that USNR was the

16  "named insured," to which the plain language of the policy referred. *See id.* Contrary to Plaintiff's

17  characterization, the *Hartford* court did not rely on a general rule that only named insureds that are

18  parties to the contract are responsible for paying deductibles. Here, Plaintiff has failed to identify

19  any provision of the 2005–06, 2006–07, or 2007–08 policies that require Defendant ACE to pay a

20  claim and then seek reimbursement only from the named insured.

21         Third, Plaintiff contends that payment of the deductible is not a condition precedent to

22  ACE's obligations to Plaintiff. Plaintiff relies exclusively on *Philips v. Noetic Specialty Insurance*

23  *Co.*, 919 F. Supp. 2d 1089 (S.D. Cal. 2013). In *Phillips*, the insurance agreement provided for $2

24  million dollars in coverage, in excess of a $500,000 self-insured retention ("SIR") provision. *Id.* at

25  1091. The SIR provision stated that the insurer would "pay those sums, in excess of the 'self-

26  insured retention', that the insured becomes legally obligated to pay . . . ." *Id.* at 1097. The policy

27  further provided that the insured's insolvency or inability to pay the SIR would not "increase" the

28

United States District Court
Northern District of California

insurer's obligations, but also would not relieve the insurer of its obligations under the policy. *Id.* The *Phillips* plaintiff sought payment on a judgment totaling $1,052,982.10. *Id.* at 1092. Recognizing that the insured had not paid any portion of the $500,000 SIR due to insolvency, the plaintiff sought only $552,982.10, i.e., the judgment less the SIR, from the insurer. *Id.* The *Phillips* court rejected the insurer's argument that payment of the SIR was a "necessary condition" to the plaintiff's claim, as there was no explicit condition in the language of the contract. *Id.* at 1097. More specifically, the *Phillips* court found that the policy explicitly required the insurer to pay sums in excess of $500,000, but did not explicitly condition payment of excess sums upon payment of the SIR. *Id.* at 1097–98. Additionally, the *Phillips* court concluded that the defendant's interpretation of the policy was contrary to the provision that the insured's insolvency would neither increase nor decrease the insurer's obligations under the policy. *Id.* at 1098.

Here, in contrast, Plaintiff has failed to identify any provision of the relevant policies which provide coverage for Plaintiff's claims in the first instance. Unlike in *Phillips*, where the plaintiff sought only amounts in excess of the unpaid SIR, here Plaintiff's claim falls squarely within the deductible. *See id.* at 1097–98. The *Phillips* court did not find that the SIR was unenforceable. To the contrary, the court assumed that the insurer was not liable for the unpaid $500,000 SIR amount. Instead, the *Phillips* court held that the insurer could not avoid its contractual obligations to pay claims in excess of the SIR. *Id.* In the instant case, the Court agrees with ACE that Plaintiff has failed to identify any contractual obligation on the part of ACE to pay claims *below* the $2 million dollar deductible. Moreover, the Court finds that ACE's argument is not contrary to public policy. Unlike in *Phillips*, where the effect of the insurer's argument would have been to allow the insurer to avoid paying claims *because* the insured was insolvent, here enforcing the plain language of the Deductible Enforcements does not allow ACE to avoid coverage based on the insured's insolvency. *See id.* at 1098–99.

Fourth, Plaintiff contends that ACE's argument that Plaintiff has failed to state a claim under the three policies violates California Insurance Code § 11580. Under § 11580, insurance policies "issued or delivered to any person in this state," are required to contain certain provisions,

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

including the following:

> (1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.

> (2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then **an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor** to recover on the judgment.

Cal. Ins. Code § 11580(b)(1)–(2) (emphasis added). Section § 11580 provides a method by which a third party claimant may bring a direct action against an insurance company, so long as that third party claimant is a judgment creditor. *Murphy v. Allstate*, 17 Cal. 3d 937, 942 (Cal. 1976) ("[Section 11580(b)(2) makes the judgment creditor a third party beneficiary of the insurance contract between the insurer and the insured.").

Here, the parties do not dispute that Plaintiff is a judgment creditor.[1] The Court finds, however, that Plaintiff has failed to show that it has stated a viable claim under the "terms and limitations" of the policies ACE issued to Kenyon. The function of § 11580 is to ensure that judgment creditors can recover under the terms and limitations of a policy, even where the insured is insolvent. *See Murphy*, 17 Cal. 3d at 942–44. Plaintiff does not and cannot cite any authority that § 11580(b)(2) allows judgment creditors to recover for claims that are not covered by the policies in the first instance. In opposition, Plaintiff contends (1) that the 2005–06 Deductible Endorsement cannot be construed to require Plaintiff to plead Kenyon's insolvency and (2) that ACE's construction of the Deductible Endorsements as to all three policies would render the agreements illusory.

As to Plaintiff's first argument, the Court agrees that as a general matter, under § 11580 an

---

[1] In its reply brief, ACE argues in passing that the policies were not issued or delivered in the state of California, thereby precluding Plaintiff's § 11580 claims as a matter of law. As this independent basis for dismissal of Plaintiff's § 11580 claim could have been raised in ACE's motion to dismiss and was not, the Court declines to reach this argument. *See Dytch v. Yoon*, No. 10-02915, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (citing *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990)).

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

insurer may not impose additional "prerequisite[s] to the commencement of an action upon the policy." *Ocean Accident & Guar. Corp. v. Torres*, 91 F.2d 464, 468 (9th Cir. 1937) (quoting *Malgren v. Sw. Auto. Ins. Co.*, 255 P. 512, 513 (Cal. 1927)). In order to recover on a judgment in an action brought under § 11580, a plaintiff must plead and prove that:

> 1) [The plaintiff] obtained a judgment for bodily injury, death, or property damage,
>
> 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,
>
> 3) the liability insurance policy was issued by the defendant insurer,
>
> 4) **the policy covers the relief awarded in the judgment**, [and]
>
> 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Garamendi v. Golden Eagle Ins. Co.*, 116 Cal. App. 4th 694, 709–10 (2004) (quoting *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal. App. 4th 998, 1015 (1992)) (emphasis added).

Plaintiff is correct that ACE could not impose, as a condition of coverage under § 11580, a requirement that Plaintiff actually prove that Kenyon is incapable of paying the deductible. However, Plaintiff must plead and prove that "the policy covers the relief awarded in the judgment." *Id.* Put another way, the parties do not dispute that under § 11580, insolvency cannot be a defense to coverage. *See Ocean Accident*, 91 F.2d at 468; *see also Gen. Accident Assurance Co v. Caldwell*, 59 F.2d 473 (9th Cir. 1932). A predicate question, however, is whether Plaintiff has adequately pled the prima facie elements of a § 11580 claim. Here, Plaintiff fails to identify any applicable provision of the 2005–06 policy that provides coverage where the claimed amount falls within the required deductible. Absent such a showing, Plaintiff cannot satisfy the prima facie elements of a § 11580 claim. *See Garamendi*, 116 Cal. App. 4th at 709–10.

Plaintiff also argues that enforcing the Deductible Endorsements of any of the three policies renders the contracts illusory. As described above, the 2005–06 policy has a $1,000,000

16

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

dollar per occurrence limit, with a general aggregate limit of $2,000,000. The deductible is $2,000,000 per occurrence. Similarly the 2006–07 and 2007–08 policies have occurrence limits of $2,000,000 and a deductible of $2,000,000 per occurrence. According to Plaintiff, if Kenyon was actually obligated to pay the deductibles in order to receive coverage, "coverage under the policies is entirely illusory." Opp. at 10. A contract is illusory "'if performance is "conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion.'" *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1483 (Ct. App. 2010) (quoting *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 15 (2000)). In *Forecast Homes*, a California Court of Appeal rejected the argument that a self-insurance retention provision rendered the policy illusory because "[t]he condition of requiring the named insured to pay the deductible amount before coverage is triggered is not a fact or event under [the insurer's] control or discretion." *Id.* at 1483–84. Similarly, here whether or not Kenyon pays the deductible is not subject to ACE's control or discretion, and that fact alone is insufficient to render the contracts illusory.

Moreover, as Plaintiff itself recognized, ACE's policies with Kenyon are a type of "fronting" arrangement. It may be the case that the function of the policies is not to actually provide coverage, but rather to allow Kenyon "for all practical purposes to self-insure losses up to the amount of the deductible without meeting the formal requirements for qualifying as a self-insurer in jurisdictions where it does business." *Forest Ins., Ltd. v. Am. Motorists Ins. Co.*, No. 89 Civ. 4326, 1994 WL 97138, at *2 (S.D.N.Y. Mar. 21, 1994). That the rights and obligations bargained for under a "fronting" type of arrangement at issue here do not provide a basis for Plaintiff to recover a claim does not automatically render the arrangement illusory. At bottom, Plaintiff cannot assert rights to coverage that are not provided for in the contracts themselves or created by statute.

Finally, Plaintiff argues that the Deductible Endorsements cannot be construed in isolation. According to Plaintiff, the existence of the subcontractor agreement with Kenyon, which obligated Kenyon to carry liability insurance with certain minimum limits that named Plaintiff as an

17

1    additional insured, should trump any contrary provisions in the ACE policies themselves.[2]

2    However, Plaintiff cites no authority for the proposition that the existence of the subcontractor

3    agreement can create additional coverage outside the scope of the policies altogether. *Rossmoor*

4    *Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622 (1975), is inapposite. In *Rossmoor*, two primary

5    insurers, one for a contractor and one for a home owner, both claimed that their policies were in

6    excess of each other, and the California Supreme Court had to address which policy would be

7    applied first. *Id.* at 627–28. As the policies themselves did not clarify priority, the *Rossmoor* Court

8    took into account the existence of a separate contractual indemnity agreement between the

9    contractor and the home owner. *Id.* at 634–35. As part of the indemnity agreement, the contractor

10   and home owner had specifically bargained for a provision that required the contractor to

11   indemnify the homeowner. *Id.* In light of this provision, the *Rossmoor* Court concluded that the

12   contractor's insurer should be viewed as the primary insurer. *Id.* Contrary to Plaintiff's

13   characterization, the *Rossmoor* Court did not find that an insurer was liable for coverage for which

14   the policy did not provide in the first instance. As Plaintiff has failed to identify a basis for

15   coverage in any of the three policies, Plaintiff cannot rely on a separate agreement to defeat

16   unambiguous terms in the policies.

17        The Court therefore finds that Plaintiff has failed to identify either a contractual or

18   statutory basis for its indemnification claims against ACE. Plaintiff has also failed to plead a claim

19   under § 11580. The Court therefore grants Defendant ACE's motion to dismiss with respect to

20   these claims. Moreover, this dismissal is with prejudice as amendment would be futile, because

21   Plaintiff cannot allege that the judgment exceeds $2 million dollars. *See Carvalho*, 629 F.3d at

22   892–93.

23

24   _____

25   [2] Unlike in Plaintiff's claims against Defendant American Safety, where Plaintiff could allege that
     the existence of the subcontractor agreement rendered *ambiguous* certain terms in American
     Safety's policies, here there is no such alleged factual dispute as to the meaning or effect of the

26   Deductible Endorsements. *See* ECF No. 56 at 11–12. ACE's policies are unambiguous with
     respect to the required deductible amount, and Plaintiff does not argue that the Deductible

27   Endorsements are ambiguous.

28
                                                        18

United States District Court
Northern District of California

**B. Duty to Defend**

ACE contends that the Deductible Endorsements also eliminated any duty to defend. Plaintiff argues that notwithstanding the Deductible Endorsements, ACE independently owed Plaintiff a duty to defend because of Plaintiff's status as a contractual indemnitee and additional insured. Moreover, Plaintiff contends that the Deductible Endorsements "merely shifted" the duty to defend to a "Claims Service Organization" named ESIS that is "in actuality a division or affiliate of ACE," and as a result, ACE is vicariously liable to Plaintiff. Opp. at 13.

As discussed above, the Deductible Endorsements of all three policies explicitly provide that ACE owed no duty to defend under the policies. More specifically, the 2005–06 policy states:

> 4. You and we mutually agree that the Claim Service Organization shown in the Schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suits" arising under this policy.
>
> 5. You agree with us that we shall not have any duty to defend any such "suit."

FAC, Exh. 4, at 25. Additionally, the 2006–07 and 2007–08 policies provide:

> 2. You and we mutually agree that the Claim Service Organization shown in the schedule will provide investigation, administration, adjustment, and settlement services, and will provide for the defense of all claims or "suit" arising under this policy. Accordingly, you agree with us that we shall not have any duty to defend any such "suit", nor to pay any "allocated loss adjustment expense" within the Deductible amounts with respect to any claim or "suit".

FAC, Exh. 5, at 25; *Id.*, Exh. 6, at 31. The parties agree that the Claim Service Organization for all three policies is ESIS, Inc. *See* MTD at 13–14; Opp at 13.[3]

Plaintiff appears to recognize that the plain language of the Deductible Endorsements eliminated ACE's duty to defend Kenyon, the named insured, and instead Plaintiff asserts that ACE owed Plaintiff some separate, independent duty of defense. As to Plaintiff's first argument, the Court notes that Plaintiff does not identify any reason why Plaintiff has special or different

---

[3] The Court notes that Exhibit 6 of the FAC, the 2007–08 policy, does not list any organization in the blank space provided for "Claims Service Organization." *See* FAC, Exh. 6, at 31. The parties appear to agree, however, that ESIS, Inc. was the Claims Service Organization for all three policies.

United States District Court
Northern District of California

1  rights to a defense under the ACE policies than the named insured. Plaintiff is correct that, as a

2  general matter, an insurer's duty to defend a named insured also applies to an additional insured.

3  *See, e.g.*, *Travels Cas. & Surety Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005,

4  1012 (S.D. Cal. 2006). In the instant case, however, Plaintiff has not sufficiently alleged that ACE

5  owed Kenyon a duty to defend under the terms of the three liability policies. Plaintiff provides no

6  argument or explanation for why its rights to a defense under any of the three policies would be

7  greater than the named insured's right to a defense. The plain language of the Deductible

8  Endorsements do not distinguish between the named insured, additional insureds, or contractual

9  indemnitees. *See* FAC, Exh. 4, at 25; *Id.*, Exh. 5, at 25; *Id.*, Exh. 6, at 31. The Court finds

10  Plaintiff's assertion unpersuasive.

11       Plaintiff further argues that while the Deductible Endorsements purport to eliminate ACE's

12  duty to defend, the Claims Services Organization, ESIS, is "in actuality a division or affiliate of

13  ACE." Opp. at 13, n.3. According to Plaintiff, ACE is vicariously liable for ESIS's failure to

14  defend Plaintiff, because ESIS is an agent of ACE. As an initial matter, the Court agrees with

15  ACE that Plaintiff has not alleged any facts showing that ESIS is an agent of ACE. Moreover,

16  even assuming ACE could be held vicariously liable for ESIS's alleged failure to defend, the

17  Court finds that Kenyon contracted to pay its own defense costs up to $2 million dollars.[4] All three

18  Deductible Endorsements provide that Kenyon is responsible for paying all "Allocated Loss

19  Adjustment Expense[s]" within the deductible amount. *See* FAC, Exh. 4, at 25; *Id.*, Exh. 5, at 25;

20  *Id.*, Exh. 6, at 31. The policies define "allocated loss adjustment expense," as "any expenses, costs

21  and interest . . . incurred in connection with the investigation, administration, adjustments,

22  settlement or defense of any claim or suit arising under this policy, which the Claim Services

23  Organization shown in the schedule, under its accounting practices, directly allocates to a

24  particular claim . . . ." *See id.*, Exh. 4, at 25; *id.* Exh. 5, at 25; *id.*, Exh. 6, at 31. The policies thus

25

26  _____

27  [4] As the Court finds that Plaintiff's claims are defeated by the plain language of the policies, the Court assumes but does not decide that ACE could be held vicariously liable for the actions of ESIS, Inc.

28
Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

outsourced claim adjustment to ESIS, but the obligation to pay all defense costs within the deductible amount remained with Kenyon. As Plaintiff has not alleged that either Plaintiff or Kenyon expended more than $2 million dollars in "allocated loss adjustment expense," Plaintiff has failed to state a basis for its claim.

The Court therefore finds that the 2005–06, 2006–07, and 2007–08 policies all explicitly provide that Defendant ACE owes no duty to defend under the policies. Moreover, the policies also allocated the responsibility to pay for any defense costs up to $2 million dollars to Kenyon, the named insured. Plaintiff's breach of insurance contract claim based on an alleged duty to defend therefore fails as a matter of law. As Plaintiff cannot cure this deficiency by amending its complaint, this dismissal is with prejudice. *See Carvalho*, 629 F.3d at 892–93.

### C.  Supplemental Payments Provision

Plaintiff further argues that the supplemental payments coverage of the three policies both include coverage for fees, costs, and interest, as well as a separate duty to defend Plaintiff as a contractual indemnitee. The supplemental payments coverage in all three policies is identical, and provides in relevant part:

> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> a. All expenses we incur. . . .
>
> d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
>
> e. All costs taxed against the insured in the "suit".
>
> f. ·Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
>
> These payments will not reduce the limits of insurance.

21

2. If we defend an insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the Indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the Interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee . . . .

FAC, Exh. 5, at 16–17.

Here, ACE does not contest that the 2005 Deductible Endorsement does not affect ACE's obligations under the supplemental payments coverage provision. As the 2005 Deductible Endorsement expressly provides that "[o]ur obligation under Section 1 - Coverages, Supplementary Payments - Coverages A and B of this policy has not changed," such an argument would be futile. *See, e.g.*, FAC, Exh. 4, at 25. Rather, ACE argues that Plaintiff's claims under the supplemental payments coverage provision fail as a matter of law because (1) ACE did not defend Kenyon in the underlying suit; (2) Plaintiff cannot satisfy the conditions for coverage as a contractual indemnitee; and (3) Plaintiff cannot recover fees, costs, and interest as a judgment creditor under *San Diego Housing Comm'n v. Indus. Indemnity Co.*, 95 Cal. App. 4th 669 (Ct. App. 2002).

As to ACE's first argument, the Court finds that whether ACE defended or did not defend Kenyon is not material to whether ACE might be obligated under the supplemental payments provision. Under California law, it is the duty to defend that triggers coverage under a supplemental payments provision, not the actual provision of a defense. *See State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 285 (Ct. App. 2009) ("[U]nder a supplemental payments

22

United States District Court
Northern District of California

United States District Court
Northern District of California

provision . . . an insurer is obligated to pay costs . . . only if the insurer had a duty to defend the insured, regardless of whether the insurer actually provided a defense." (citing *Golden Eagle*, 148 Cal. App. 4th at 996)). As the *Mintarsih* court explained, allowing insurers to avoid coverage under supplemental payments provisions when insurers refuse to defend would "discourage insurers from providing a defense in cases where coverage was in doubt, contrary to the principle that the law should encourage insurers to provide a defense in such cases." 175 Cal. App. 4th at 285. Whether ACE is liable under the supplemental payments provision therefore depends on whether ACE owed Kenyon and Plaintiff a duty to defend.

ACE further argues that it did not owe Plaintiff a duty to defend in Plaintiff's capacity as a contractual indemnitee, because Plaintiff could not satisfy the policies' conditions for a contractual indemnitee to be entitled to a defense. More specifically, Defendant argues that because Plaintiff alleges it cross-complained against Kenyon for indemnity, the supplemental payments coverage provision (2)(d)'s condition that "no conflict appear[] to exist between the interests of the insured and the interests of the indemnitee" could not be satisfied. Moreover, Defendant also argues that the supplemental payments coverage provision (2)(e)'s condition that the insured and indemnitee agree to the "same counsel" could not have been satisfied in light of the cross-complaint.

While Plaintiff addresses the first part of the supplemental payments provision, Plaintiff does not address the conditions imposed on a contractual indemnitee before ACE is obligated to defend the indemnitee. Plaintiff has therefore offered no argument or explanation as to why Plaintiff might satisfy these conditions, or why these conditions are unenforceable. The Court has found no California authority concluding that an insurer may not condition its obligation to defend a contractual indemnitee on the absence of a conflict of interest between the indemnitee and the insured. Relatedly, there appears to be no requirement under California law that an insurer must provide independent counsel where a named insured and contractual indemnitee have a potential conflict of interest. The only California case addressing an insurer's duty to provide independent counsel where the insureds appear to have a conflict of interest concluded that no such duty was triggered under the facts of that case. *See Spindle v. Chubb/Pac. Indem. Grp.*, 88 Cal. App. 3d 706

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   (Ct. App. 1979). While *Spindle* is factually distinguishable, [5] the Court does note that the *Spindle*

2   court did not reference any statutory or contractual obligation that would prevent an insurer from

3   refusing to provide independent counsel where the conflict of interest was between an insured and

4   a contractual indemnitee. [6] Here, as Plaintiff has not explained why ACE might owe Plaintiff a

5   duty to defend notwithstanding these conditions, and there appears to be no California authority

6   preventing ACE from enforcing these conditions, the Court finds that Plaintiff has failed to state a

7   claim for breach of insurance contract.

8           As to ACE's third and final argument, the Court notes that the parties do not re-brief the

9   issue of whether supplemental payments coverage can include interest and costs where a judgment

10  creditor brings suit pursuant to § 11580, but instead refer the Court to the briefing filed in

11  connection with the Court's March 19, 2015 Order granting in part and denying in part Defendant

12  American Safety's and Defendant AIG Specialty's motions to dismiss. ECF No. 56. As the Court

13  concluded in its March 19, 2015 Order, the case *San Diego Housing Comm'n v. Indus. Indemnity*

14  *Co.*, 95 Cal. App. 4th 669 (Ct. App. 2002), is distinguishable from the present action. In *San*

15  *Diego Housing*, the California Court of Appeal concluded that the third party claimant could not

16  state a claim for interest and costs under the supplemental payments provision in an action brought

17  under § 11580, as the third party was merely an incidental beneficiary to the insurance contract.

18  *Id.* at 675. Here, in contrast, Plaintiff alleges that it is an assignee, additional insured, and a

19  contractual indemnitee, in addition to being a judgment creditor. As such, Plaintiff has alleged that

20  it was more than merely an incidental beneficiary to any potential duty to defend. *See* March 19,

21  2015 Order at 13–15. This conclusion is of little assistance to Plaintiff, however, as the Court

22

23  ───────────────

24  [5] In *Spindle*, there were two named insureds on two separate policies with the same insurer. Both
    insureds were defendants in the same action, and the insurer provided the same counsel for the
    insureds. 88 Cal. App. 3d at 709–12. Importantly, the parties did not dispute that the insureds were

25  each entitled to a defense. *See id.* Here, in contrast, Plaintiff did not independently contract with
    ACE and the parties actively dispute whether Plaintiff was entitled to a defense.

26  [6] In the context of conflicts of interest between an insurer and an insured, there are both statutory
    and contractual obligations for the insurer to provide independent counsel to the insured. *See* Cal.

27  Civ. Code. § 2860(a); *San Diego Navy Fed. Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.
    App. 3d 358 (Ct. App. 1984).

28
                                            24
    Case No. 14-CV-04074-LHK
    ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    concludes that Plaintiff has failed to show that it was entitled to a defense under the supplemental

2    payments coverage provisions as a contractual indemnitee in the first place.

3         In sum, the Court finds that Plaintiff has failed to state a claim for breach of insurance

4    contract or under § 11580 based on the supplemental payments provisions. The Court therefore

5    grants Defendant ACE's motion to dismiss with respect to these claims. Here, Plaintiff has

6    affirmatively alleged that Plaintiff filed a cross-complaint against Kenyon, which would have

7    made it impossible for the same counsel to represent both parties. In light of this allegation, there

8    appears to be no plausible way for Plaintiff to allege that Plaintiff could satisfy the conditions for a

9    defense as a contractual indemnitee, and the Court finds that amendment would be futile. As such,

10   this dismissal is with prejudice. *See Carvalho*, 629 F.3d at 892–93.

11        Finally, as Plaintiff's bad faith and declaratory relief claims are predicated on a showing of

12   either a breach of insurance contract claim or a § 11580 claim, Plaintiff's bad faith and declaratory

13   relief claims are also dismissed with prejudice.

14   **IV. CONCLUSION**

15        For the reasons stated above, the Court hereby GRANTS Defendant ACE's motion to

16   dismiss with prejudice.

17   **IT IS SO ORDERED.**

18   Dated: April 14, 2015

19                                                       _Lucy H. Koh_____

20                                                       LUCY H. KOH
                                                         United States District Judge

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*

Case No. 14-CV-04074-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE